# EXHIBIT B

*Toledo Ohio*

# PROMISSORY NOTE

$1,500,000.00                                                        November 27, 2013

FOR VALUE RECEIVED, the undersigned, KIDZ REAL ESTATE GROUP, LLC, an Ohio limited liability company ("KIDZ" or "Maker"), promises to pay to the order of SB SPRING, LLC, a California limited liability company, or its successors or assigns ("Holder" or "Payee"), at 312 W. 5th Street, Unit Office, Los Angeles, California 90013, or at such other place as Holder from time to time may designate in writing, as follows:

**A. Principal Amount:** The principal amount of the loan hereunder is One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) (the "Loan Amount").

**B. Interest.** Interest shall be payable on the Loan Amount from and after the Effective Date (hereinafter defined) to and including the Maturity Date (hereinafter defined) at a rate equal to eleven percent (11%) per year, based on and calculated according to a year consisting of 360 days, and charged for the actual number of days elapsed during which interest is payable ("Interest Rate").

**C. Origination Fee.** Maker shall pay to Holder an origination fee ("Origination Fee") in the amount of Twenty-Two Thousand Five Hundred and 00/100 Dollars ($22,500.00). Such Origination Fee shall be due and payable upon the funding of this Promissory Note (this "Note"). Maker acknowledges that the Origination Fee does not constitute interest, and Maker shall not assert any claim that said Origination Fee constitutes interest.

**D. Payments.** Commencing on January 1, 2014, and continuing on the first day of each and every calendar month thereafter through and including the day on which this Note is paid in full, Maker shall pay to Holder monthly, in arrears, interest at the Interest Rate on the outstanding principal balance of this Note. In all events, the entire outstanding principal balance of this Note, together with all accrued but unpaid interest thereon, and together with all other sums due to Holder under this Note or under any of the Loan Documents (hereinafter defined and incorporated herein by reference), shall be due and payable to Holder on the Maturity Date. All payments due and payable under this Note shall be made without relief from valuation and appraisement laws.

**E. Effective Date:** The date of this Note.

**F. Maturity Date:** November 30, 2014; subject to one eight-month extension and one six-month extension as provided hereunder. Maker may extend the Maturity Date hereunder by eight (8) months to July 31, 2015, by delivering written notice to Holder on a date not less than 120 days prior thereto, which notice shall be accompanied by an extension payment of 3% of the then outstanding principal balance hereunder, so long as Maker is not in default hereunder

after expiration of applicable notice and cure provisions herein. Maker may extend the Maturity Date hereunder by an additional six (6) months thereafter to January 31, 2016, by delivering written notice to Holder on a date not less than 120 days prior thereto, which notice shall be accompanied by an extension payment of 3% of the then outstanding principal balance hereunder, so long as Maker is not in default hereunder after expiration of applicable notice and cure provisions herein.

G. **Prepayment.** This Note may be prepaid only in accordance with the following provisions:

(a) This Note may be prepaid in whole or in part at any time.

(b) Any prepayment of this Note shall be made on the first day of a calendar month.

(c) Maker shall give written notice of Maker's intention to prepay this Note at least five (5) days prior to the intended date of such prepayment.

(d) As a condition to such prepayment:

(i) All accrued but unpaid interest on the outstanding principal amount of the Loan, together with all other amounts then due and payable under this Note or under any of the other Loan Documents, shall be paid in full.

(ii) If such prepayment is made at any time prior to or on May 1, 2014, then the accrued but unpaid interest on the outstanding principal amount of the Loan shall be deemed to include an amount equal to all such interest as would otherwise be payable through May 1, 2014, a total of $68,750.

That portion of the aforesaid $68,750 payment which is in excess of any amount as would be otherwise then due as accrued but unpaid interest shall be referred to hereafter as the Prepayment Fee. Maker understands and agrees to the calculations and charges used to determine the Prepayment Fee and hereby agree that the Prepayment Fee is representative of, and provision for, Holder's bargained-for consideration and recompense for loss of the interest payments through the expected maturity date of the Loan Amount, and the parties agree further that exact or specific calculations of same may be and are indefinite, and that the parties have agreed upon, and accept, the foregoing as reasonable and appropriate, waiving any other such formula and calculation thereof.

H. [INTENTIONALLY OMITTED]

I. Application of Payments. All such payments on account of this Note, unless otherwise provided herein, shall be made by 3:00 P.M. on the date due by wire transfer in accordance with wire instructions provided by Holder, and shall be applied first to interest on the unpaid principal balance at the applicable rate(s) herein provided, second to all other sums due Holder hereunder or under any of the other Loan Documents, and the remainder to reduce the unpaid principal balance hereof.

J. Late Charges. If any installment of principal or interest due hereunder shall not be paid within five (5) days after such payment is due, Maker shall pay to Holder a "late charge" in the amount of ten percent (10%) of the overdue payment in order to defray part of the increased cost of collection occasioned by any such late payment, as liquidated damages and not as a penalty.

K. Security. Repayment of this Note is secured by, *inter alia*; (a) that certain Continuing Joint and Several Guaranty Agreement (the "Guaranty"), of even date with this Note, made by Vladimir Sklarov a/k/a Val Sklarov ("VS"), Sharon Sklarov ("SS") and Sklarov Childrens Revocable Trust Dated February 17, 1998 (the "Trust") (VS, SS, and the Trust being herein together sometimes called "Guarantors" or individually a "Guarantor") in favor of Holder; (b) a Mortgage, Security Agreement and Financing Statement (the "Mortgage"), of even date with this Note, made by KIDZ in favor of Holder; (c) a UCC Financing Statement ("UCC") made by KIDZ for the benefit of Holder as Secured Party; (d) an Assignment of Rents and Leases (the "Assignment"), of even date with this Note, made by KIDZ in favor of Holder; (e) an Environmental Indemnity Agreement (the "Environmental Agreement"), of even date with this Note, made by KIDZ and Guarantors in favor of Holder; and (f) Assignment Permits, Licenses, Authorizations, Approvals and Agreements (the "Permit Assignment") of even date with this Note, made by KIDZ in favor of Holder. This Note, and each and every other document now evidencing or securing or hereafter given to evidence or secure the Loan (including, without limitation, the Guaranty, the Mortgage, the UCC, the Assignment, the Environmental Agreement, the Permit Assignment and all other documents and amendments, modifications, replacements and restatements thereof), are herein collectively referred to as the "Loan Documents."

L. [INTENTIONALLY OMITTED]

M. **Events of Default.** Maker hereby expressly agrees that time is of the essence hereof, and that any of the following shall be deemed a default ("Event of Default"):

1. If any default occurs in the payment of principal or interest hereunder or in the payment of any other required monetary amount under any of the other Loan Documents on any date on which any such payment shall be due, or in the performance of any other obligations of Maker or Guarantors under the Loan Documents, and continues for twenty-eight (28) days without payment or cure;

2. [INTENTIONALLY OMITTED]

3. If any of Maker or Guarantors shall create, effect, contract for, commit to or consent to, or shall suffer or permit, any conveyance, sale, assignment, transfer, lien (other than a lien which is being contested in accordance with the terms of the Mortgage), pledge, mortgage, security interest, hypothecation or other encumbrance or alienation of the property (the "Property") which are encumbered by the Mortgage or any part of such Property as to have a material impact or substantially jeopardize Holder's interest therein, in Holder's sole judgment and discretion, without the prior written consent of Holder;

4. If any of Guarantors shall create, effect, contract for, commit to or consent to, or shall suffer or permit, any sale, assignment, transfer, lien, pledge, mortgage, security interest, hypothecation or other encumbrance or alienation of any interest of Maker as to have a material impact or substantially jeopardize Holder's interest therein, in Holder's sole judgment and discretion, without the prior written consent of Holder (other than a lien which is being contested in accordance with the terms of the Mortgage);

5. If there is any material adverse change in the net worth of Maker;

6. If the assets of Maker or any Guarantor with respect to the Property are seized, attached, subjected to a writ or distress warrant, or are levied upon, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors as to have a material impact or substantially jeopardize Holder's interest therein;

7. If a petition under the Bankruptcy Reform Act of 1978 or any similar law or regulation shall be filed by or against Maker, or if Maker shall make an assignment for the benefit of creditors, or if any case or proceeding is filed by Maker for dissolution or liquidation;

8. If Maker is enjoined, restrained or in any way prevented by court order from conducting all or any material part of Maker's business affairs with respect to the Property;

9. If any of Guarantors is enjoined, restrained or in any way prevented by court order from conducting all or any material part of Guarantors' business affairs with respect to the Property as to have a material impact or substantially jeopardize Holder's interest therein;

10. If a notice of lien, levy or assessment is filed of record with respect to all or any of said assets of Maker or all or any of said assets of any of Guarantors by the United States or any state or any department of agency thereof, or if any taxes or debts owing at any time or times hereafter to any one of them becomes a lien or encumbrance upon the assets of Maker or the assets of any of Guarantors (other than a lien which is being contested in accordance with the terms of the Mortgage);

11. If Maker or the Trust is dissolved or liquidated;

12. If either of the Guarantors die or become incompetent and the remaining Guarantor does not satisfy Lender as to the continuing viability and value of the remaining Guarantor's obligations under the Guaranty, this Note and the other Loan Documents or provide a replacement Guaranty by a substitute Guarantor satisfactory to Lender within sixty (60) days of such death or incompetency; or

13. If any representation or warranty made by or on behalf of Maker or any of Guarantors herein or in any of the other Loan Documents or in connection with the Loan shall prove untrue in respect as to have a material impact or substantially jeopardize Holder's interest therein;

Then, at the option of Holder, upon notice to Maker and Guarantors and upon Maker's and/or Guarantors' failure to cure within twenty-eight (28) days thereafter, Holder may do one or more of the following:

1. Collect interest on the entire unpaid principal balance hereof at a rate of interest equal to fifteen percent (15%) per annum from the date of such default until all monies owed by Maker to Holder under this Note are paid in full (which default rate of interest, Maker hereby agrees, is a reasonable and fair rate at the time of the execution of this Note, and will be a reasonable and fair rate at the time of the collection of same);

    2.     Declare the entire unpaid principal balance hereof, with interest accrued thereon, and all other amounts due from Maker hereunder and any of the other Loan Documents, to be immediately due and payable; and/or

    3.     Pursue each and every other right, remedy, and power it may have under this Note and any of the other Loan Documents and at law and in equity.

Unless otherwise indicated, the rights, remedies and powers of Holder, as provided in this Note and in all of the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against Maker, Guarantors, the Property and any other security given at any time to secure the payment hereof, all at the sole discretion of Holder.

    N.     **Joint and Several Liability.** Except as specifically provided herein or in any of the other Loan Documents, Maker and each Guarantor, jointly and severally waive presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, and they agree that the liability of each of them shall be joint, several, and unconditional and without regard to the liability of any other party, and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by the Holder hereof; and Maker and each guarantor, surety and endorser hereof, if any, consent to every extension of time, renewal, waiver, or modification that may be granted by any holder hereof with respect to the payment or other provisions of this Note, and to the release of any collateral given to secure the payment hereof, or any part thereof, with or without substitution, and agree that additional makers, guarantors, sureties, or endorsers may become parties hereto without notice to Maker or such guarantors, sureties, or endorsers and without affecting the liability of any of them hereunder.

    O.     **Waiver.** Holder shall not, by any act of omission or commission other than acceptance of a late payment, be deemed to waive any of its rights, remedies, or powers hereunder or otherwise unless such waiver is in writing and signed by Holder and then only to the extent specifically set forth therein. A waiver of Holder's rights, remedies or powers with respect to one default shall not be construed as continuing or as a bar to or waiver of such rights, remedies, or powers with respect to a subsequent default.

    P.     **Attorneys Fees and Costs.** If this Note is placed in the hands of any attorney for collection by civil action or otherwise, or to enforce its collection or to protect any security for its payment in the Event of a Default hereunder, Maker shall pay all costs of collection and litigation together with attorneys' fees incurred by Holder with respect to the collection and/or enforcement of sums due to it with respect to this Note.

Q. **Notice.** Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given on the date thereof if personally delivered or on the third business day after being deposited in United States certified mail, return receipt requested, postage prepaid, or upon delivery by Federal Express or other similar nationally recognized overnight courier service, to the following addresses:

IF TO HOLDER:   SB Spring, LLC
                312 W. 5th Street, Unit Office
                Los Angeles, California 90013
                Attention: Barry Shy

WITH A COPY TO: Donald A. Shindler, Esq.
                Brown, Udell, Pomerantz & Delrahim, Ltd
                1332 North Halsted Street, Suite #100
                Chicago, Illinois 60642

IF TO MAKER:    c/o SS Management
                200 E. Howard Street, Suite 296
                Des Plaines, Illinois 60018

WITH A COPY TO: Ted Donner, Esq.
                1125 Wheaton Oaks Court
                Wheaton, Illinois 60187

or to such other address as the party to receive such notice may have theretofore furnished to all other parties by notice in accordance herewith.

R. Miscellaneous Provisions.

1. The Loan is a business loan. This loan does not constitute a "consumer loan" or a "residential loan" within the meaning of applicable Ohio laws. Maker and Guarantors agree that the Loan evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C., Section 1601, *et seq.*

2. Time is of the essence hereof.

3. This Note shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Ohio.

4. This Note may not be changed or amended orally but only by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

5. Both Maker and Holder represent and warrant to each other that they have been represented by competent and experienced counsel in the preparation, negotiation and drafting of this Note and, as such, no presumption shall attach in the interpretation of this Note more strictly or favorably towards either Maker or Holder.

6. Holder shall not be construed for any purpose to be a partner, joint venturer, agent or associate of either of Maker or of any of Guarantors or of any lessee, operator, concessionaire or licensee of either of Maker or any of Guarantors in the conduct of its business, and by the execution of this Note, Maker and Guarantors agree to indemnify, defend, and hold Holder harmless, including but not limited to all costs, expenses and reasonable attorneys' fees, from and against any and all damages, costs, expenses and liability that may be incurred by Holder as a result of a claim that Holder is such partner, joint venturer, agent or associate.

7. Irrespective of the nature of any alleged breach under any of the other Loan Documents, in no event shall either party be liable to the other with respect to any claim for indirect, incidental, consequential, special or exemplary damages or lost profits, and the parties, for themselves and each of their respective affiliates and any guarantor, hereby waive all such claims.

8. This Note has been made and delivered at Chicago, Illinois, and all funds disbursed to or for the benefit of Maker and Guarantor will be disbursed in Chicago, Illinois. For purposes hereof, any due date or payment due hereunder

which occurs on a Saturday, Sunday or observed Federal or State of Ohio Holiday shall be deemed to be the next-occurring business day thereafter.

9. If this Note is executed by more than one party, the obligations and liabilities of each Maker and Guarantor under this Note shall be joint and several and shall be binding upon and enforceable against each Maker and Guarantor and their respective heirs, personal representatives, successors and assigns. This Note shall inure to the benefit of, and may be enforced by, Holder and its successors and assigns.

10. If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Maker, Guarantors and Holder shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Note, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

11. If the interest provisions herein or in any of the other Loan Documents shall result, at any time during the Loan, in an effective rate of interest which, for any month, exceeds the limit of usury or other laws applicable to the Loan or this Note, all sums in excess of those lawfully collectible as interest of the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such monies from either of Maker or any of Guarantors, with the same force and effect as though the payer has specifically designated such extra sums to be so applied to principal and Holder had agreed to accept such extra payment(s) as a premium-free prepayment. Notwithstanding the foregoing, however, Holder may at any time and from time to time elect by notice in writing to reduce or limit the collection to such sums which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirements of the preceding sentence. In no event shall any agreed to or actual exaction as consideration for the Loan transcend the limits imposed or provided by the law applicable to this transaction or the maker hereof in the jurisdiction in which the Loan is made for the use or detention of money or for forbearance in seeking its collection.

12. Holder may at any time assign its rights and obligations in this Note and the other Loan Documents and upon such assignment Holder shall be relieved from all liability with respect to the same. In addition, Holder may at any time sell one or more participations in the Note. Maker shall not assign their interests in this

Note, or any other agreement with Holder or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Holder.

13. Each and every party hereto hereby represents and warrants to the other that they have entered into this document of their own volition with full mental and legal capacity, free from mental defect, undue influences, fraud, menace, duress, coercion, drugs, alcohol or any other intoxicating substance and that they have read this Note in full and completely and fully understand and consent to be bound by all of the terms contained herein.

14. Maker hereby acknowledges and agrees that Holder has notified Maker that, pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act"), and Holder's policies and practices, Holder may be required to obtain, verify and record certain information and documentation that identifies Maker and Guarantors, which information includes the name and address of Maker and Guarantors and such other information that will allow Holder to identify Maker and Guarantors in accordance with the Act. In addition, Maker shall (a) ensure that no person who owns a controlling interest in or otherwise controls Maker or any subsidiary of Maker is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control ("OFAC"), the Department of the Treasury or included in any Executive Orders; (b) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (c) comply, and cause any of its subsidiaries to comply, with all applicable Bank Secrecy Act ("BSA") laws and regulations, as amended.

S. FORUM SELECTION AND JURY TRIAL WAIVER

TO INDUCE HOLDER TO ACCEPT THIS NOTE, MAKER AND GUARANTORS IRREVOCABLY AGREE THAT ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN LUCAS COUNTY, OHIO OR THE FEDERAL COURTS IN THE NORTHERN DISTRICT OF OHIO OR THE NORTHERN DISTRICT OF ILLINOIS. MAKER AND GUARANTORS HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN LUCAS COUNTY, OHIO OR THE FEDERAL COURTS SITTING IN THE NORTHERN DISTRICT OF OHIO OR THE NORTHERN DISTRICT OF ILLINOIS. MAKER AND GUARANTORS WAIVE PERSONAL SERVICE OF PROCESS UPON THEM, AND AGREE THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY

REGISTERED MAIL DIRECTED TO MAKER AT THE ADDRESS STATED HEREIN WITH SERVICE SO MADE TO BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT, WITH NOTICE TO ANY SUCH PARTY'S COUNSEL OF RECORD AT SUCH TIME, PURSUANT TO THE NOTICE REQUIREMENTS HEREIN.

MAKER, GUARANTORS AND HOLDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (B) EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. MAKER, GUARANTORS AND HOLDER EACH AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE OTHER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

[SIGNATURES CONTAINED ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the undersigned have executed and delivered this Note at Chicago, Illinois, as of the day and year first above written.

                              KIDZ REAL ESTATE GROUP LLC

                  By:    SKLAROV REVOCABLE CHILDREN'S TRUST DATED FEBRUARY 17, 1998, Member and Manager

                  By:    _____
                                Sharon Sklarov as Trustee

STATE OF _ILLINOIS_ )
                      ) SS
COUNTY OF _LAKE_ )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Sharon Sklarov, who is personally known to me to be the person whose name is subscribed to the foregoing instrument as the Trustee for SKLAROV REVOCABLE CHILDREN'S TRUST DATED FEBRUARY 17, 1998, Manager of KIDZ REAL ESTATE GOUP, LLC, an Ohio limited liability company ("KIDZ"), appeared before me this day in person and acknowledged that she signed and delivered said instrument as her own free and voluntary acts and as the free and voluntary acts of KIDZ for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this 27th day of November, 2013.

_____
NOTARY PUBLIC

My Commission Expires:
_9/10/16_

OFFICIAL SEAL
MELISSA M PIWOWAR
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/10/16