# EXHIBIT C

WE HEREBY CERTIFY THAT THIS IS A TRUE AND ACCURATE COPY OF THE ORIGINAL DOCUMENT.

NEAR NORTH NATIONAL TITLE LLC

For Recorder's Use Only

## OPEN-END MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

**THIS MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT** (this "Mortgage") is made as of the 27th day of November, 2013 by KIDZ REAL ESTATE GROUP, LLC, an Ohio limited liability company ("KIDZ" or "Mortgagor"), in favor of SB SPRING, LLC, a California limited liability company (herein, together with its successors and assigns, called "Mortgagee"), having its principal place of business at 312 W. 5th Street, Unit # Office, Los Angeles, California 90013.

### WITNESSETH

**THAT WHEREAS,** concurrently herewith, Mortgagor has executed a Promissory Note (the "Note"), in the original principal amount of ONE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,500,000.00), payable to Mortgagee, bearing interest at the rate set forth in the Note, the entire remaining balance of principal and interest of which Note is due and payable on November 30, 2014.

**NOW THEREFORE,** Mortgagor, to secure payment of the Indebtedness (hereinafter defined), including interest and late charges in accordance with the terms, provisions and limitations of the Note, and the performance of the covenants and agreements herein contained by Mortgagor to be performed, and also in consideration of the sum of One Dollar ($1.00) in hand paid, the receipt whereof is hereby acknowledged, does by these presents mortgage, warrant, grant, remise, release, alien and convey unto Mortgagee, its successors and assigns, all interest in the real estate located in the County of Lucas and State of Ohio that is more fully described in Exhibit "A" attached hereto and made a part hereof, together with all improvements now or at any time constructed thereon, and all tenements, reversions, remainders, easements, fixtures and appurtenances now or hereafter thereto belonging, and all rents, issues and profits thereof for so long and during all such times as Mortgagor may be

entitled thereto (which are pledged primarily and on a parity with said real estate and not secondarily), utility deposits, common area maintenance charges, real estate tax and insurance premium deposits, insurance premium rebates, tax refunds and rebates (irrespective of the time period to which they relate) and utility refunds and rebates (irrespective of the time period to which they relate) to which Mortgagor may be entitled or which Mortgagor may now or hereafter have therein or thereon, and all fixtures, apparatus, equipment and articles (other than tenant trade fixtures) which relate to the use, occupancy and enjoyment of the real estate, including, without limiting the generality of the foregoing, those used to supply heat, gas, air conditioning, water, light, power, sprinkler protection, waste removal, refrigeration and ventilation (whether single units or centrally controlled); it being understood that the enumeration of any specific articles of property shall in no way exclude or be held to exclude any items of property not specifically mentioned (all of the land, estate and property hereinabove described being herein together called the "Premises"), it being intended that all of the land, estate and property hereinabove described real, personal and mixed, whether affixed or annexed or not (except where otherwise hereinabove specified) and all rights hereby conveyed and mortgaged be a unit, and it is hereby understood, agreed and declared (to the maximum extent permitted by law) to form part and parcel of the real estate and to be appropriated to the use of the real estate, and shall be, for the purposes of this Mortgage, deemed to be real estate and conveyed and mortgaged hereby;

**TO HAVE AND TO HOLD** the Premises unto the Mortgagee and its successors and assigns until all Indebtedness evidenced by the Note is fully discharged, for the purposes and uses herein set forth.

This Mortgage shall also secure any and all renewals or extensions of the whole or any part of the Indebtedness hereby secured however evidenced, with interest at such lawful rate as may be agreed upon, and any such renewals or extensions or any change in the terms or rate of interest shall not impair in any manner the validity or priority of this Mortgage, nor release Mortgagor from personal liability for the Indebtedness hereby secured.

**IT IS FURTHER UNDERSTOOD AND AGREED THAT:**

1. **Maintenance, Repair and Restoration of Improvements, Payment of Prior Liens.** Mortgagor shall: (a) promptly repair, restore or rebuild any buildings or improvements now or hereafter on the Premises which may become damaged or be destroyed to substantially the same character as prior to such damage or destruction, so long as insurance proceeds are sufficient therefor; (b) keep the Premises constantly in good condition and repair, without waste; (c) keep the Premises free from mechanics' liens or other liens or claims for lien not expressly subordinated to the lien hereof (collectively called "Liens"), subject, however, to the rights of the Mortgagor set forth in Paragraph 2 below; (d) immediately pay when due any indebtedness which may be secured by a lien or charge on the Premises on a parity with or superior to the lien hereof, and upon request exhibit satisfactory evidence of the discharge of such lien to Mortgagee, subject, however, to the rights of the Mortgagor set forth in Paragraph 2 below; (e) complete within a reasonable time any building(s) or other improvement(s) now or at any time in process of erection upon the Premises; (f) comply with all federal, state and local requirements of law, regulations, ordinances, orders and judgments and all covenants,

easements and restrictions of record with respect to the Premises and the use thereof; (g) make no material alterations in the Premises without Mortgagee's prior written consent; (h) suffer or permit no material change in the general nature of the occupancy of the Premises without Mortgagee's prior written consent; (j) observe and comply with all conditions and requirements (if any) necessary to preserve and extend all rights, easements, licenses, permits (including without limitation, zoning variations and any non-conforming uses and structures), privileges, franchises and concessions applicable to the Premises or contracted for in connection with any present or future use of the Premises; and (k) pay each item of Indebtedness secured by this Mortgage when due according to the terms hereof and of the Note.

2.    **Right to Contest.**  Notwithstanding anything in this Mortgage to the contrary, Mortgagor may, in good faith and with reasonable diligence, contest the validity or amount of any lien on the Premises, and defer payment and discharge thereof during the pending of such contest, provided that: (a) such contest shall have the effect of preventing the sale or forfeiture of the Premises or any part thereof, or any interest therein, to satisfy such lien; (b) within twenty-eight (28) days after Mortgagor has been notified of the assertion of such lien, Mortgagor shall have notified Mortgagee in writing of Mortgagor's intention to contest such lien; and (c) Mortgagor shall have deposited with Mortgagee at such place as Mortgagee may from time to time in writing appoint, and in the absence of such appointment, then at the office of Mortgagee, a sum of money which shall be sufficient in the reasonable judgment of Mortgagee to pay in full such lien and all interest which might become due thereon, and shall keep on deposit an amount so sufficient at all times, increasing such amount to cover additional interest whenever, in the reasonable judgment of Mortgagee, such increase is advisable, or shall obtain a title endorsement or title indemnity to the lender's title insurance policies of Mortgagee or a surety bond of a surety company reasonably satisfactory to Mortgagee, insuring or bonding Mortgagee against any harm as a result of such contest. Such deposits shall earn interest at no more than commercial money market rates. If Mortgagor shall fail to prosecute such contest with reasonable diligence or shall fail to pay the amount of the lien plus any interest finally determined to be due upon the conclusion of such contest, to the extent such amount exceeds the amount which Mortgagee will pay as provided below, or shall fail to maintain sufficient funds on deposit as hereinabove provided or to provide a title endorsement or indemnity or surety bond, within twenty-eight (28) days of notice by Mortgagee, then Mortgagee may, at its option, apply any money so deposited in payment of or on account of such lien, or that part thereof then unpaid, together with all interest thereon. If the amount of money so deposited shall be insufficient for the payment in full of such lien, together with all interest thereon, Mortgagor shall forthwith, upon demand, deposit with Mortgagee a sum which, when added to the funds then on deposit, shall be sufficient to make such payment in full. Mortgagee shall, upon the final disposition of such contest, apply any money so deposited in full payment of such lien or that part thereof then unpaid, together with all interest thereon (provided Mortgagor is not then in default hereunder) when so requested in writing by Mortgagor and when furnished by Mortgagor with sufficient funds to make such payment in full and with evidence satisfactory to Mortgagee of the amount of payment to be made.

3.    **Indebtedness.**    "Indebtedness" means all obligations of Mortgagor to

Mortgagee for payment of any and all amounts due under the Note or this Mortgage, together with any and all other indebtedness now or at any time due and owing from Mortgagor to Mortgagee, howsoever and whensoever arising or created. "Indebtedness" also includes all amounts so described herein and all costs of collection, legal expenses and reasonable in-house or reasonable outside attorneys' fees, including paralegal and law clerk fees, incurred or paid by Mortgagee in attempting the collection or enforcement of the Note or this Mortgage or any guaranty of the Note, or any extension or modification of this Mortgage, the Note, or any guaranty of this Note, or in any legal proceeding occurring by reason of Mortgagee's being the mortgagee under this Mortgage or any extension or modification thereof or the payee under the Note or any extension or modification thereof, including but not limited to any declaratory judgment action, or in the repossession, custody, sale, lease, assembly or other disposition of any collateral for the Note. The costs of collection secured by this Mortgage include amounts expended in litigation preparation and computerized research, telephone and telefax expenses, mileage, depositions, postage, photocopies, process service, video tapes and the like as part of the reasonable costs of collection and enforcement. Further, any costs incurred for environmental testing, audits, reviews, inspections, remediation and clean-up of the Premises or as a result of an environmental release or discharge or violation from or with respect to the Premises shall be recoverable costs.

This Mortgage also secures, and the term "Indebtedness" also includes, future obligations and advances (whether made as an obligation, made at the option of Mortgagee, made after reduction to zero or other balance, or made otherwise) and future modifications, extensions and renewals of any Indebtedness or obligations secured by this Mortgage to the same extent and with the same priority as if made on the date of execution hereof up to the maximum aggregate principal amount of Five Million and 00/100 Dollars ($5,000,000.00) plus interest and any disbursements made for the payment of taxes, levies or insurance on the Property covered by the lien of this Mortgage with interest on those disbursements. Mortgagor hereby covenants to pay all of the Indebtedness in accordance with the terms of the Note and the other documents, including, without limitation, this Mortgage, which secure the Note, and to perform all of their obligations under the Note and under all of the other documents, including, without limitation, this Mortgage which secures the Note.

4. **Payment of Taxes.** Mortgagor shall pay all real estate taxes and assessments (general and special) before any penalty interest attaches, and shall pay special taxes, special assessments, water charges, sewer service charges, and all other charges against the Premises of any nature whatsoever when due, and shall, upon written request, furnish to Mortgagee duplicate receipts therefor within twenty-eight (28) days following the date of payment. Mortgagor may pay in full "under protest" any tax or assessment which Mortgagor may desire to contest, in the manner provided by law. If Mortgagor does not elect to pay under protest, Mortgagor will post such bond or other security as Mortgagee may reasonably require to protect the lien of this Mortgage.

5. **Tax Deposits.** From and after the occurrence of a Event of Default by Mortgagor and the request of Mortgagee in Mortgagee's sole discretion, Mortgagor shall deposit with Mortgagee or such depositary ("Depositary") as Mortgagee may from time to time in writing appoint, and in the absence of such appointment, then at the office of Mortgagee, together with and in addition to each monthly payment of principal and interest due on the Note, an amount equal to one-twelfth (1/12) of all real estate taxes and assessments (general and special) assessed against the Premises, as determined by Mortgagee. Such deposits are to be held without any allowance of interest to Mortgagor and are to be used for the payment of taxes and assessments (general and special) on the Premises next due and payable when they become due. If the funds so deposited are insufficient to pay any such taxes or assessments (general or special) when the same become due and payable, Mortgagor shall, not later than the twenty-eighth (28th) day prior to the last day on which the same may be paid without penalty or interest, deposit with Mortgagee or the Depositary such additional funds as may be necessary to pay such taxes and assessments (general and special) in full. If the funds so deposited exceed the amount required to pay such taxes and assessments (general and special) for any year, the excess shall be applied on a subsequent deposit or deposits. Said deposits need not be deposited separate and apart from any other funds of Mortgagee or the Depositary.

If any such taxes or assessments (general or special) shall be levied, charged, assessed or imposed upon or for the Premises, or any portion thereof, and if such taxes or assessments shall also be a levy, charge, assessment or imposition upon or for any other premises not encumbered by the lien of this Mortgage, then the computation of any amount to be deposited under this Paragraph 5 shall be based upon the entire amount of such taxes or assessments, and Mortgagor shall not have the right to apportion the amount of any such taxes or assessments for the purposes of such computation.

6. **Insurance.** Mortgagor shall keep all buildings and improvements on the Premises and the Collateral (defined in Paragraph 10 below) now or hereafter situated on said Premises insured against loss or damage (in the amount equal to (a) the greater of (i) the original principal sum of the loan secured by the mortgage or (ii) full replacement value of the Premises plus the collateral) by fire, lightning, wind storm, hail storm, aircraft, vehicles, smoke, explosion, riot or civil commotion as provided by the standard all risks policy and against such other hazards as may reasonably be required by Mortgagee, including without limitation of the generality of the foregoing: (a) rent loss or business interruption insurance to cover losses for not less than twelve (12) months; and (b) flood insurance whenever same is

available and, in the reasonable opinion of Mortgagee, such protection is necessary. Mortgagor shall also provide insurance coverage with such limits for injury to and death of any person or damage to property of a combined single limit coverage of not less than the Indebtedness secured hereby. All policies of insurance to be furnished hereunder shall be in forms, companies and amounts satisfactory to Mortgagee, with waiver of subrogation and full replacement cost endorsements and a standard non-contributory mortgagee clause attached to all policies, including a provision requiring that the coverage evidenced thereby shall not be terminated or materially modified without twenty-eight (28) days prior written notice to Mortgagee, and the same shall list Mortgagee as an additional insured under said policy of insurance. Upon request, Mortgagor shall deliver a copy of the original policy to Mortgagee and, in the case of insurance about to expire upon request, shall deliver a certificate evidencing renewal not less than twenty-eight (28) days prior to their respective dates of expiration.

Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Mortgagee is included thereon under a standard non-contributory mortgagee clause acceptable to Mortgagee. Mortgagor shall immediately notify Mortgagee whenever any such separate insurance is taken out, and shall promptly deliver to Mortgagee a certified copy of the original policy of insurance upon request by Mortgagee. In the event of a foreclosure of the lien of this Mortgage, or of a transfer of title to the Premises either in lieu of foreclosure or by purchase at the foreclosure sale, all interest in all insurance policies in force shall pass to Mortgagee, transferee or purchaser, as the case may be.

7. **Insurance Deposits.** From and after the occurrence of an Event of Default by Mortgagor and the request of Mortgagee in Mortgagee's sole discretion, Mortgagor shall deposit with Mortgagee or the Depositary (as defined in Paragraph 5 above) for the purpose of providing funds with which to pay premiums when due on all policies of fire and other hazard insurance covering the Premises and the Collateral, commencing within ten (10) days of such request and on the first day of each month following thereafter, a sum equal to the Mortgagee's estimate of the premiums that will next become due and payable on such policies reduced by the amount, if any, then on deposit with Mortgagee or the Depositary, divided by the number of months to elapse before one (1) month prior to the date when such premiums become due and payable. No interest shall be allowed to Mortgagor on account of any such deposit, and said deposit need not be kept separate and apart from any other funds of Mortgagee or the Depositary.

**8.** **Mortgagee's Interest In and Use of Tax and Insurance Deposits; Security Interest.** A security interest, within the meaning of the Ohio Uniform Commercial Code, ORC 1301.101 et seq. (the "Code"), is hereby granted to Mortgagee in and to all monies at any time on deposit pursuant to Paragraphs 5 and 7 hereof, and such monies and all of Mortgagor's right, title and interest herein are hereby assigned to Mortgagee, all as additional security for the Indebtedness hereunder. Such monies shall be applied by Mortgagee or Depositary to the payment of the particular taxes or assessments or insurance premiums for payment of which they were deposited. Any remainder thereafter shall be applied in the manner provided for in paragraph 18 below. Neither Mortgagee nor the Depositary shall be liable for any act or omission taken in good faith with respect to such deposits, but only for its gross negligence or willful misconduct.

**9.** **Adjustment of Losses with Insurer and Application of Proceeds of Insurance.** In case of loss or damage by fire or other casualty, Mortgagor is authorized to settle and adjust any claim under insurance policies which insure against such risks, subject to Mortgagee's approval, which approval will not be unreasonably withheld. At the option of Mortgagee, such insurance proceeds as may be recoverable from an insurer in excess of that amount reasonably necessary to perform any rebuilding or restoration reasonably necessary to maintain the value of the Premises and such amount as may be reasonably necessary to recompense Mortgagor for actual losses incurred may be applied to the reduction of the Indebtedness, whether due or not. Regardless of whether such insurance proceeds are used to reimburse Mortgagor for the cost of said rebuilding or restoration, and regardless of whether such insurance proceeds are adequate for such purpose, the Premises shall be restored or rebuilt by Mortgagor so as to be of at least equal value and substantially the same character as prior to such damage or destruction. Upon request, Mortgagee shall be furnished with satisfactory evidence of the estimated cost of the completion thereof, and shall be furnished with such architect's certificates, lien waivers, contractor's and subcontractor's sworn statements and other documentation or certificates as Mortgagee shall request. Mortgagee must approve plans and specifications of such work before such work shall be commenced, which approval shall not be unreasonably withheld or denied. If the estimated cost of completion exceeds the amount of the insurance proceeds available, Mortgagor shall, on written demand of Mortgagee, deposit with Mortgagee in cash the amount of such excess cost.

**10.** **Security Agreement and Financing Statement.** Mortgagor and Mortgagee agree that: (a) this Mortgage shall constitute a Security Agreement within the meaning of the Code with respect to all sums on deposit with Mortgagee pursuant to Paragraphs 5, 7, 9 and 23 hereof ("Deposits") and with respect to any property included in the definition herein of the word "Premises," which property may not be deemed to form a part of the real estate described herein or may not constitute a "fixture" (within the meaning of Section ORC 1309.102 of the Code), and all replacements of such property, substitutions for such property, additions to such property, and the proceeds thereof (said property, replacements, substitutions, additions and the proceeds thereof, but specifically excluding all personal property or trade fixtures of any lessee located on the Premises, being sometimes herein collectively referred to as the "Collateral"); and (b) the Deposits and all of Mortgagor's right, title and interest therein are hereby assigned to Mortgagee, all to secure payment of the Indebtedness and to secure performance by Mortgagor of the terms, covenants and provisions hereof.

If an Event of Default occurs or exists under this Mortgage, then, in accordance with the provisions of any applicable law, Mortgagee, pursuant to the appropriate provisions of the Code, shall have an option to proceed with respect to both the real property and Collateral in accordance with its rights, powers and remedies with respect to the real property, in which event the default provisions of the Code shall apply. So long as no Event of Default exists or occurs hereunder, Mortgagor shall be permitted to sell or otherwise dispose of the Collateral when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of the Premises, replacing the same or substituting for the same as reasonably necessary with other Collateral at least equal in value and utility to the initial value and utility of that disposed of and in such a manner that said replacement or substituted Collateral shall be subject to the security interest created hereby and that the security interest of Mortgagee shall be perfected and first in priority, subject only to the Senior Mortgage, it being expressly understood and agreed that all replacements, substitutions and additions to the Collateral shall be and become immediately subject to the security interest of this Mortgage and covered hereby. Mortgagor shall, from time to time, on request of Mortgagee no more frequently than once per quarter, deliver to Mortgagee, at the cost of Mortgagor: (a) such further financing statements and security documents and assurances as Mortgagee may require to the end that the liens and security interest created hereby shall be and remain perfected and protected in accordance with the requirements of any present or future law; and (b) an inventory of the Collateral in reasonable detail.

Mortgagor and Mortgagee agree, to the extent permitted by law, that: (a) all of the property described within the definition of the word "Premises" herein are or are to become fixtures on the land described herein, Mortgagor hereby representing that to the best of Mortgagor's knowledge said property is free and clear of any and all liens or encumbrances; (b) this instrument, upon recording or registration in the real estate records of the proper office, shall constitute a "fixture filing" within the meaning of Section 1309.102 of the Code; and (c) Mortgagor is the record owner of the land described herein. The addresses for the Mortgagor (Debtor) and Mortgagee (Secured Party) are as follows: Mortgagor(Debtor): c/o SS Management, 200 East Howard Street, Suite 296, Des Plaines, Illinois 60015; Mortgagee (Secured Party): 312 W. 5th Street, Unit Office, Los Angeles, California 90013.

If the Collateral is sold in connection with a sale of the Premises, Mortgagor shall notify Mortgagee prior to such sale and shall require, as a condition of such sale, that the purchaser specifically agree to assume Mortgagor's obligations as to the security interests herein granted and to execute whatever agreements and filings are deemed necessary by Mortgagee to maintain Mortgagee's first perfected security interest in the Collateral, Deposits and the deposits described in Paragraph 8 above; provided, however, such notice and condition shall not be required if Mortgagee has agreed to release its lien in the Collateral and the Premises in accordance with Paragraph 24.

**11.     Stamp Tax; Effect of Changes in Laws Regarding Taxation.**  If, by the laws of the United States of America or of any state or subdivision thereof having jurisdiction over Mortgagor, any tax is due or becomes due in respect of the issuance of the Note (other than income taxes assessed to Mortgagee), Mortgagor covenants and agrees to pay such tax in the manner required by any such law.  Mortgagor further covenants to reimburse Mortgagee for any reasonable sums which Mortgagee may expend by reason of the imposition of any tax on the issuance of the Note.

In the event of the enactment, after this date, of any law of the state in which the Premises is located deducting from the value of the land for the purpose of taxation of any lien thereon, or imposing upon Mortgagee the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by Mortgagor, or changing in any way the laws relating to the taxation of mortgages or debts secured by mortgages or Mortgagee's interest in the Premises, or the manner of collection of taxes, so as to affect this Mortgage or the Indebtedness or the holder thereof, then, and in any such event, Mortgagor, upon demand by Mortgagee, shall pay such taxes or assessments or reimburse Mortgagee therefor.

**12.     Observance of Lease Assignment.**  As additional security for the payment of the Note and for the faithful performance of the terms and conditions contained herein, Mortgagor is separately agreeing to an Assignment of Rents and Leases to Mortgagee, the terms and conditions of which are hereby incorporated by reference.

**13.     Mortgagor and Lien Not Released.**  From time to time Mortgagee may, at Mortgagee's option, without giving notice to or obtaining the consent of Mortgagor or Mortgagor's successors or assigns or the consent of any junior lienholder, guarantor or tenant, without liability on Mortgagee's part and notwithstanding Mortgagor's breach of any covenant, agreement or condition: (a) release anyone primarily or secondarily liable on any of the Indebtedness; (b) accept a renewal note or notes therefor; (c) release from the lien of this Mortgage any part of the Premises; (d) take or release other or additional security for the Indebtedness; (e) consent to any plat, map or plan of the Premises; (f) consent to the granting of any easement; (g) join in any extension or subordination agreement; (h) agree in writing with Mortgagor to modify the rate of interest or period of amortization of the Note or extend the time of payment or the amount of the monthly installment payable thereunder; and (i) waive or fail to exercise any right, power or remedy granted by law or herein or in any other instrument given at any time to evidence or secure the payment of the Indebtedness.

Any actions taken by Mortgagee pursuant to the terms of this Paragraph 13 shall not impair or affect: (a) the obligations of Mortgagor or Mortgagor's successors or assigns to pay any sums at any time secured by this Mortgage and to observe all of the covenants, agreements and conditions herein contained; (b) the guaranty of any individual or legal entity for payment of the Indebtedness; and (c) the lien or priority of the lien hereof against the Premises. Mortgagor shall pay to Mortgagee a reasonable service charge and such title insurance premiums and reasonable attorneys' fees as may be incurred by Mortgagee for any action described in this Paragraph 13 taken at the request of Mortgagor or its beneficiary or beneficiaries.

14. **Mortgagee's Reliance on Tax Bills and Assessment Letters.** Mortgagee, in making any payment hereby authorized: (a) relating to taxes and assessments, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; or (b) subject to Section 2 above, for the purchase, discharge, compromise or settlement of any other prior lien, may do so without inquiry as to the validity or amount of any claim for lien which may be asserted.

15. **Acceleration of Indebtedness in Case of an Event of Default.** An "Event of Default" shall mean the following:

(a)    if Mortgagor shall fail to make due and punctual payment of principal or interest in accordance with the terms of the Note after notice and the expiration of any applicable cure period, or if there shall be any other Event of Default, as defined in the Note; or

(b)    if Mortgagor (i) shall file a petition for liquidation, reorganization or adjustment of debt under Title 11 of the United States Code (11 U.S.C. § 101 et seq.) or any similar law, state or federal, whether now or hereafter existing, (ii) shall file any answer admitting insolvency or inability to pay its debts, or (iii) shall fail to obtain a vacation or stay of involuntary proceedings within ninety (90) days, as hereinafter provided; or

(c)    if any order for relief for Mortgagor shall be entered in any case under Title 11 of the United States Bankruptcy Code, or a trustee or a receiver shall be appointed for Mortgagor in any voluntary or involuntary proceeding, or any court shall have taken jurisdiction of all or the major part of the property for Mortgagor in any voluntary or involuntary proceeding for the reorganization, dissolution, liquidation, adjustment of debt or winding up of either of Mortgagor, and such trustee or receiver shall not be discharged or such jurisdiction not be relinquished or vacated or stayed on appeal or otherwise stayed within ninety (90) days; or

(d)    if Mortgagor shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of all or

any major part of its property; or

(e)    if Mortgagor shall fail to observe or perform any other covenant, agreement or condition set forth herein and required to be kept or performed or observed by the Mortgagor, which failure is not cured within twenty-eight (28) days after written notice thereof, provided that, if Mortgagor acts diligently, continuously in good faith to cure such failure within such twenty-eight (28) day period after written notice and such failure cannot reasonably be cured within such time period, then such time period shall be extended; or

(f)    if there is any material change in the ownership of mortgagor as provided in Section 31 hereof, or

(g)    any other event or omission which is described as an Event of Default in this Mortgage.

If an Event of Default shall exist or occur, then the whole of the Indebtedness shall at once, at the option of Mortgagee, become immediately due and payable.

16.    **[INTENTIONALLY BLANK]**

17.    **Foreclosure; Expense of Litigation.**  When the Indebtedness or any part thereof shall become due, whether by acceleration or otherwise, Mortgagee shall have the right to foreclose the lien hereof for such Indebtedness or part thereof.  In addition to the Indebtedness, as defined in Section 3, in any civil action to foreclose the lien hereof, there shall be allowed and included as additional Indebtedness in the order or judgment for foreclosure and sale all reasonable expenditures and expenses which may be paid or incurred by or on behalf of Mortgagee for reasonable attorneys' fees, appraiser's fees, special process server fees, outlays for documentary and expert evidence, stenographers' charges, publication costs, and costs (which may be estimated as to items to be expended after entry of said order or judgment) of procuring all such abstracts of title, title searches and examination, title insurance policies and similar data and assurances with respect to the title as Mortgagee may deem reasonably necessary either to prosecute such civil action or to evidence to bidders at any sale which may be had pursuant to such order or judgment the true condition of the title to, or the value of the Premises.  At all times, Mortgagor shall appear in and defend any suit, action or proceeding that might in any way in the sole and reasonable judgment of Mortgagee affect the value of the Premises, the priority of this Mortgage or the rights and powers of Mortgagee hereunder or under any document given at any time to secure the Indebtedness. Mortgagor shall, at all times, indemnify, hold harmless and reimburse Mortgagee on demand for any and all loss, damage, expense or cost, including cost of evidence of title and attorneys' fees, arising out of or incurred in connection with any proceeding in which Mortgagee is held to have been liable as a result of negligence or willful act of Mortgagor.

18.    **Application of Proceeds of Foreclosure Sale.**  The proceeds of any foreclosure sale of the Premises shall be distributed and applied in the following order of priority: first, on account of all costs and expenses incident to the foreclosure proceedings,

including all such items as are mentioned in the preceding Paragraph hereof; second, all other items which may under the terms hereof constitute secured Indebtedness additional to that evidenced by the Note, with interest thereon as herein provided; third, all principal and interest remaining unpaid on the Note; and fourth, any surplus to Mortgagor or any other party entitled thereto as their rights may appear.

**19.     Appointment of Receiver or Mortgagee in Possession.**  Upon, or at any time after, the commencement of an action to foreclose this Mortgage, the court in which such action was commenced may, upon request of Mortgagee, on an ex parte basis (any required notice of such appointment or any proceeding to appoint the same being hereby expressly and knowingly waived by Mortgagor) appoint a receiver of the Premises either before or after foreclosure sale, without regard to the solvency or insolvency of Mortgagor at the time of application for such Receiver and without regard to the then value of the Premises or whether the same shall be then occupied as a homestead or not.  Such receiver or Mortgagee in possession shall have power to collect the rents, issues and profits of the Premises as the Court may order during the pendency of such foreclosure action and, in case of a sale and deficiency, during the full statutory period of redemption (if any), whether there be redemption or not, as well as during any further times (if any) when Mortgagor, except for the intervention of such receiver, would be entitled to collect such rents, issues and profits, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the premises during the whole of said period.  The court from time to time may also authorize the receiver to apply the net income in its hands in payment in whole or in part of: (a) the Indebtedness secured hereby or by any order or judgment foreclosing the lien of this Mortgage, or any tax, special assessment or other lien which may be or become superior to the lien hereof or the lien of such order or judgment, provided such application is made prior to foreclosure sale; (b) the deficiency in case of a sale and deficiency. The parties agree that Kenneth P. Polsinelli and McKinley, Inc. and/or any related entity or person shall not be selected to serve as a receiver hereunder.

**20.     Mortgagee's Performance of Defaulted Acts.**  If an Event of Default exists or occurs under this Mortgage, Mortgagee may, but need not, make any payment or perform any act herein required of Mortgagor in any form and manner Mortgagee deems reasonably expedient, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting said Premises or contest any tax or assessment or cure any default of any landlord in any lease of the Premises.  All monies paid for any of the purposes herein authorized and all reasonable expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Mortgagee in regard to any tax referred to in Paragraph 11 or to protect the Premises, as required by Section 1 hereinabove or the lien hereof, shall be so much additional Indebtedness secured hereby, and shall become immediately due and payable and with interest thereon at the rate of interest set forth in the Note applicable to a period when a default exists thereunder.  Inaction of Mortgagee shall never be considered as a waiver of any right accruing to it on account of any default on the part of Mortgagor.

**21.     Rights Cumulative.**  Each right, power and remedy conferred upon the Mortgagee by this Mortgage and by all other documents evidencing or securing the Indebtedness and conferred by law and in equity is cumulative and in addition to every other right, power and remedy, express or implied, given now or hereafter existing, at law and in equity; and each and every right, power and remedy herein or therein set forth or otherwise so existing may by exercised from time to time as often and in such order as may be deemed expedient by Mortgagee; and the exercise or the beginning of the exercise of any right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy; and no delay or omission of, or discontinuance by, Mortgagee in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any default or acquiescence therein.

**22.     Mortgagee's Right of Inspection.**  Mortgagee shall have the right to inspect the Premises at all reasonable times upon reasonable advance notice to Mortgagor, and access thereto shall be permitted for that purposes.

**23.     Condemnation.**  Mortgagor hereby assigns, transfers and sets over unto Mortgagee the entire proceeds of any claim for damages for any of the Premises taken or damaged under the power of eminent domain or by condemnation (the "Condemnation Proceeds").  At the option of Mortgagee, the surplus of any Condemnation Proceeds shall be applied to the reduction to the Indebtedness, whether due or not, after being used to reimburse Mortgagor for the cost of the rebuilding or restoration of the Premises.  Regardless of whether such Condemnation Proceeds are used to reimburse Mortgagor for the cost of said rebuilding or restoration, and regardless of whether such Condemnation Proceeds are adequate for such purpose, in the event that the surplus resulting from any such condemnation after repairs is not sufficient to restore the equity in the Premises (in the event of a partial taking) to the same equity to loan ratio as the Premises have to the loan as of the date of this instrument's execution, then the Premises shall be restored or rebuilt by Mortgagor so as to be of at least such value and substantially the same character as prior to such taking or damage.  Upon

request, Mortgagee shall be furnished with satisfactory evidence of the estimated cost of the completion thereof, and shall be furnished with such architect's certificates, lien waivers, contractor's and subcontractor's sworn statements and other documentation or certificates as Mortgagee shall request. Mortgagee must approve plans and specifications of such work before such work shall be commenced, which approval shall not be unreasonably withheld or denied. If the estimated cost of completion exceeds the amount of the Condemnation Proceeds available, Mortgagor shall, on written demand of Mortgagee, deposit with Mortgagee in cash the amount of such excess cost.

24. **Release Upon Payment and Discharge of Mortgagor's Obligations.** Mortgagee shall release this Mortgage and the lien hereof by proper instrument in recordable form upon payment and discharge of all Indebtedness secured hereby (including any prepayment charges and late charges provided for herein or in the Note).

25. **Giving Notice.** Any notice which either party hereto may desire or be required to give to the other party shall be deemed sufficient if given in accordance with the terms of the Note, which is hereby incorporated herein by reference.

26. **Waiver of Defense.** No action for the enforcement of the lien or of any provision hereof shall be subject to any defense which would not be good and available to the party interposing same in an action at law upon the Note.

27. **Waiver of Statutory Rights.** Mortgagor shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws or any so-called "Moratorium Laws," now existing, in order to prevent or hinder the enforcement or foreclosure of the lien of this Mortgage, but hereby waives the benefit of such laws. Mortgagor, for itself and all who may claim through or under it, waive any and all right to have the property and estates comprising the Premises marshaled upon any foreclosure of the lien hereof and agree that any court having jurisdiction to foreclose such lien may order the Premises sold as an entirety. Mortgagor does hereby expressly waive any and all right of redemption from any order or judgment of foreclosure of the lien of this Mortgage on behalf of Mortgagor, and each and every person, except judgment creditors of Mortgagor, acquiring any interest in or title to the Premises subsequent to the date of this Mortgage.

28. **Financial Statements and Records.** Mortgagor covenants and agrees that it will keep and maintain books and records of account in which full, true and correct entries shall be made of all dealings and transactions relative to the Premises, which books and records of account shall, at reasonable times and on reasonable notice, be open to the inspection of Mortgagee and its accountants and other duly authorized representatives. Such books of record and account shall be kept and maintained in accordance with generally accepted accounting principles consistently applied. Mortgagor further covenants and agrees to deliver such financial statements and information as Mortgagee shall require from time to time.

29. **Filing and Recording Charges and Taxes.** Mortgagor will pay all filing, registration, recording and search and information fees, and all expenses incident to the

execution and acknowledgment of this Mortgage and all other documents securing the Note, and all federal, state, county and municipal taxes, other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution, delivery, filing, recording or registration of the Note, this Mortgage and all other documents securing the Note and all assignments thereof.

30.    **Business Purpose; Usury Exemption.**    The proceeds of the loan secured by this Mortgage will be used for business purposes, and the principal obligation secured hereby constitutes a "business loan".    The loan secured by this Mortgage does not constitute a "consumer loan" within the meaning of the Ohio Revised Code.

31.    **Due on Sale or Further Encumbrance Clause.**    The occurrence at any time of any of the following events shall be deemed to be an unpermitted transfer of title to the Premises and therefore an Event of Default hereunder:

(a)    any sale, conveyance, assignment or other transfer of, or the grant of a security interest in, all or any part of the title to the Premises without consent of Mortgagee, which consent is hereby granted for any sale for a unit in excess of the amount due under the loan secured hereby (the "Loan) at such time and any other liens or claims against the property;

(b)    any sale, conveyance, assignment, or other transfer of, or the grant of a security interest in, a majority of the membership interest of Mortgagor, or of any limited liability company or other person or entity directly or indirectly controlling Mortgagor; and

(c)    any sale, conveyance, assignment, or other transfer of, or the grant of a security interest in, any membership interest in any limited liability company or other person or entity directly or indirectly controlling Mortgagor.

Any consent by Mortgagee, or any waiver of an Event of Default under this Paragraph, shall not constitute a consent to, or waiver of, any right, remedy or power of Mortgagee upon a subsequent Event of Default under this Paragraph.    Leases entered into in the ordinary course of Mortgagor's business shall be deemed a permitted transfer of title and not an Event of Default.

32.    **Binding Nature.**    This Mortgage and all provisions hereof shall extend to and be binding upon the original Mortgagor named on page one (1) hereof and their respective successors, grantees, assigns, each subsequent owner or owners of the Premises and all persons claiming under or through Mortgagor; and the word "Mortgagor" when used herein shall include such persons or entities who shall have executed the Note or this Mortgage as "Mortgagor or as "Borrower."

33.    **Release of Previous Holder.**    The word "Mortgagee" when used herein shall include the successors and assigns of the original Mortgagee named on page one (1) hereof,

15

and the holder or holders, from time to time, of the Note. However, whenever the Note is sold, each prior holder shall be automatically freed and relieved, on and after the date of such sale, of all liability with respect to the performance of each covenant and obligation of Mortgagee hereunder thereafter to be performed, provided that any monies in which Mortgagor has an interest, which monies are then held by the seller of the Note, are turned over to the purchaser of the Note.

34. **Severability and Applicable Law.** In the event one or more of the provisions contained in this Mortgage or in the Note or in any other document given at any time to secure the payment of the Note shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provision of this Mortgage, the Note or other document, and this Mortgage, the Note or other document shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein. The validity and interpretation of this Mortgage and the Note it secures are to be construed in accordance with and governed by the laws of the State of Ohio.

35. **Governmental Compliance.** Mortgagor shall not by act or omission permit any lands or improvements not subject to the lien of this Mortgage to include the Premises or any part thereof in fulfillment of any governmental requirement, and Mortgagor hereby assigns to Mortgagee any and all rights to give consent for all or any portion of the Premises to be so used. Similarly, no lands or improvements comprising the Premises shall be included with any lands or improvements not subject to the lien of this Mortgage in fulfillment of any governmental requirement. Mortgagor shall not by act or omission impair the integrity of the Premises as a single zoning lot separate and apart from all other premises. Any act or omission by Mortgagor which would result in a violation of any of the provisions of this Paragraph shall be void.

36. **Estoppel Certificates.** Each of Mortgagor and Mortgagee, within fourteen (14) days after receipt of a written request from the other, agrees to furnish from time to time a signed statement setting forth the amount of the Indebtedness and whether or not any default, offset or defense then is alleged to exist against the Indebtedness and, if so, specifying the nature thereof.

37. **Non-Joinder of Tenant.** After an Event of Default, Mortgagee shall have the right and option to commence a civil action to foreclose the lien of this Mortgage and to obtain an order or judgment of foreclosure and sale subject to the rights of any tenant or tenants of the Premises. The failure to join any tenant or tenants of the Premises as party defendant or defendants in any such civil action or the failure of any such order or judgment to foreclose their rights shall not be asserted by Mortgagor as a defense in any civil action instituted to collect the Indebtedness secured hereby, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Premises, any statute or rule of law at any time existing to the contrary notwithstanding.

38. **Regulation G Clause.** Mortgagor covenants that the proceeds evidenced by the Note secured hereby will not be used for the purchase or carrying of registered equity

securities within the purview and operation of Regulation G issued by the Board of Governors of the Federal Reserve System, or for the purpose of releasing or retiring any indebtedness which was originally incurred for any such purpose.

39.    **Lien for Loan Commissions, Service Charges and the Like.** So long as the original Mortgagee named on page one (1) hereof is the owner of the Note, and regardless of whether any proceeds of the loan evidenced by the Note have been disbursed, this Mortgage also secures the payment of all loan commissions, service charges, liquidated damages, expenses and advances due to or incurred by Mortgagee in connection with the loan transaction intended to be secured hereby, all in accordance with the application of, and loan commitment issued to and accepted by Mortgagor in connection with said loan.

40.    **Governmental Requirements; Utilities.** Mortgagor will at all times fully comply with, and cause the Premises and the use and condition thereof fully to comply with, all federal, state, county, municipal, local and other governmental statutes, ordinances, requirements, regulations, rules, orders and decrees of any kind whatsoever that apply or relate to Mortgagor or the Premises or the use thereof, and will observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits, privileges, franchises and concessions (including, without limitation, those relating to land use and development, landmark preservation, construction, access, water rights and use, noise and pollution) which are applicable to Mortgagor or have been granted for the Premises or the use thereof. Mortgagor will pay all utility charges incurred in connection with the Premises and maintain all utility services available for use at the Premises.

**41.    Consent to Jurisdiction.**  TO INDUCE MORTGAGEE TO ACCEPT THIS MORTGAGE, MORTGAGOR IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THE NOTE AND THIS MORTGAGE WILL BE LITIGATED IN COURTS HAVING SITUS IN LUCAS COUNTY, OHIO OR THE FEDERAL COURTS IN THE NORTHERN DISTRICT OF OHIO OR THE NORTHERN DISTRICT OF, ILLINOIS. MORTGAGOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED IN LUCAS COUNTY, OHIO OR THE FEDERAL COURTS IN THE NORTHERN DISTRICT OF OHIO OR THE NORTHERN DISTRICT OF ILLINOIS, WAIVE PERSONAL SERVICE OF PROCESS UPON MORTGAGOR, AND AGREE THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO MORTGAGOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT, WITH NOTICE TO ANY SUCH PARTY'S COUNSEL OF RECORD AT SUCH TIME.

**42.    Waiver of Jury Trial.**    MORTGAGOR AND MORTGAGEE (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS MORTGAGE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS MORTGAGE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. MORTGAGOR  AND MORTGAGEE EACH AGREE THAT THEY WILL NOT ASSERT ANY CLAIM AGAINST THE OTHER PARTY OR PARTIES  OR ANY OTHER PERSON INDEMNIFIED UNDER THIS MORTGAGE ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

**43.    Additional Covenants of Mortgagor.** Mortgagor hereby further covenants and agrees to do the following:

(a)    Mortgagor shall furnish to Mortgagee annual federal income tax returns with respect to Mortgagor as required by Mortgagee.

(b)    Mortgagor shall furnish to Mortgagee upon the request but no more frequently than, on a quarterly basis, a certification, in form and substance acceptable to Lender, that (i) Mortgagor are current in the payment of (A) all real estate taxes due and payable with respect to the Premises, (B) all insurance premiums payable with respect to all insurance policies required by Mortgagee to be maintained in connection with the Premises, and (C) all utility charges due and payable with respect to the Premises; (ii) all insurance policies required to be maintained by Mortgagee with respect to the Premises are in full force and effect, and no notice of cancellation has been received by Mortgagor with respect to any of such policies;  (iii) there is no existing Event of Default or event which, with the giving of notice or the lapse of time or both would

18

constitute an Event of Default, with respect to the Note or any of the documents securing the Note; and (iv) there is no existing Event of Default or event which, with the giving of notice or the lapse of time or both would constitute an Event of Default, under any documents evidencing or securing any other loan to Mortgagor or for which Mortgagor is liable, whether directly or indirectly, and whether or not on a contingent basis only.

(c)    Mortgagor shall furnish to Mortgagee upon request but no more frequently than, on a quarterly basis, a current rent roll of the Premises, which rent roll shall identify all new leases and all new vacancies.

**44.**   **Mortgagee's Liability**. No action shall be commenced by Mortgagor for any claim against Mortgagee under the terms of this Agreement unless a notice specifically setting forth the claim of Mortgagor shall have been given to Mortgagee within thirty (30) days after the occurrence of the event which Mortgagor alleges gave rise to such claim, and failure to give such notice shall constitute a waiver of any such claim. If Mortgagee shall be in breach of Mortgagee's obligations under this Agreement by reason of failure to make a disbursement if Mortgagee is required to do under the terms hereof, Mortgagor's sole remedy on account thereof shall be to compel Mortgagee to make the disbursement which is determined wrongfully to have been withheld (upon the making of which the same shall be treated as any other disbursement pursuant to the terms of this Agreement). In any event, Mortgagee shall not be liable to Mortgagor for incidental or consequential damages, whatever the nature of a breach by Mortgagee in the obligations of Mortgagee hereunder.

**45.**   **Mortgagee's Non-Responsibility**. Mortgagor hereby acknowledges and agrees that the undertaking of Mortgagee under this Mortgage is limited as follows:

Mortgagee shall not act in any way as the agent for or trustee of Mortgagor. Mortgagee does not intend to act in any way for or on behalf of Mortgagor with respect to disbursement of the proceeds of the indebtedness secured hereby. Its purpose in making the requirements set forth herein and in the Note and related loan and security documents is that of a lender protecting the priority of its mortgage and the value of its security. Mortgagee assumes no responsibility for the completion of any improvements erected or to be erected upon the Property, the payment of bills or any other details in connection with the Premises, any plans and specifications in connection with the Premises, or Mortgagor's relations with any contractors. This Mortgage is not to be construed by Mortgagor or anyone furnishing labor, materials, or any other work or product for improving the Premises as an agreement upon the part of Mortgagee to assure anyone that he will be paid for furnishing such labor, materials or any other work or product; any such person must look entirely to Mortgagor for such payment. Mortgagee assumes no responsibility for the architectural or structural soundness of any improvements on or to be erected upon the Premises or for the approval of any plans and specifications in connection therewith or for any improvements as finally completed.

**46.**   **Separate Parcels**: If more than one property, lot or parcel is covered by this Mortgage, and if this Mortgage is foreclosed upon, or judgment is entered upon any obligation

secured hereby, execution and/or sale may be made upon any one or more of the properties, lots or parcels and not upon the others, or upon all of such properties, lots or parcels, either together or separately, and at different times or at the same time, and execution sales may likewise be conducted separately or concurrently, in each case at the sole discretion of Mortgagee.

47. **Open-End Mortgage**. Mortgagor and Mortgagee intend that this Mortgage comply with Division (A) of Ohio Revised Code § 5301.232. In that regard, Mortgagor and Mortgagee intend that, in addition to any other debtor obligations secured hereby, this Mortgage shall secure unpaid balances of loan advances made after this Mortgage is recorded. The maximum amount of unpaid loan indebtedness secured hereby, exclusive of interest thereon, which may be outstanding at any time is $5,000,000.00. It is agreed that the lien hereby created will take precedence over and be a prior lien to any other lien of any character whether vendor's, materialmen's or mechanic's lien hereafter created on the Premises, and in the event the proceeds of the Loan are used to pay off and satisfy any liens existing on the Premises, then Mortgagee is, and will be, subrogated to all of the rights, liens and remedies of the holders of the indebtedness so paid. Mortgagor agrees that the loan secured by this Mortgage may be paid out by Mortgagee as provided in the Note and related loan and security documents, or any amendment thereto, and Mortgagee may do all things as provided to be done by Mortgagee thereunder.

**[REMAINDER OF THIS PAGE LEFT BLANK]**

**IN WITNESS WHEREOF**, Mortgagor has executed this instrument as of the day and year first above written.

KIDZ REAL ESTATE GROUP LLC

By:   SKLAROV REVOCABLE CHILDREN'S
      TRUST DATED FEBRUARY 17, 1998, Member
      and Manager

By:   _____
      Sharon Sklarov as Trustee

STATE OF _ILLINOIS_  )
                     ) SS
COUNTY OF _LAKE_     )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Sharon Sklarov, who is known to me to be the person whose name is subscribed to the foregoing instrument as trustee of the Sklarov Revocable Childrens Trust Dated February 17, 1998, the manager of KIDZ REAL ESTATE GROUP, LLC, an Ohio limited liability company ("KIDZ"), appeared before me this day in person and acknowledged that she signed and delivered said instrument as her own free and voluntary act as trustee of the Sklarov Childrens Revocable Trust Dated February 17, 1998, and as the free and voluntary act of KIDZ, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this 27th day of November, 2013.

_____
NOTARY PUBLIC

My Commission Expires:
_9/10/16_

```
┌─────────────────────────────────────┐
│          OFFICIAL SEAL              │
│        MELISSA M PIWOWAR            │
│   NOTARY PUBLIC - STATE OF ILLINOIS │
│   MY COMMISSION EXPIRES:09/10/16    │
└─────────────────────────────────────┘
```

*When Recorded Return To:*
Donald A. Shindler, Esq.
Brown, Udell, Pomerantz & Delrahim, Ltd
1332 North Halsted Street
Suite #100
Chicago, Illinois 60642
(312) 475-9900

## EXHIBIT A

### LEGAL DESCRIPTION

**[INSERT LEGAL DESCRIPTION]**

Commonly known as: _____

PINs: _____

Parcel 1:

Situated in the City of Toledo, County of Lucas and State of Ohio:

And known as being all Family Units contained in the New Larchmont Community Condominium I, II, III, IV, V, VI and VII, Condominiums in the City of Toledo, Lucas County, Ohio as the same are designated, delineated and described in the Declarations of Condominium Ownership and Bylaws thereof filed for record in the Office of the County Record, Lucas County, Ohio on January 27, 1984 and recorded as Deed Records 84-036-B04, 84-037-E04, 84-039-C04, 84-041-A05, 84-042-D05, 84-044-B06 and 84-045-E08 respectively, and the Drawings appertaining thereto recorded in Volume 102 of Plats, page 1, et. seq., together with the undivided interest in the common areas and facilities declared in the said Declarations to be appurtenant to such units. Such units are subject to and entitled to the benefit of all of the right, privileges, duties, easements, conditions, restrictions and limitations contained in the said Declaration, Bylaws and Drawings and in Chapter 5311 of the Ohio Revised Code.

Together with: All of the rights and obligations granted to, reserved by and placed upon Grantor as Grantor under the Declarations of the Condominium for The New Larchmont Community Condominium I, The New Larchmont Community Condominium II, The New Larchmont Community Condominium III, The New Larchmont Community Condominium IV, The New Larchmont Community Condominium V, The New Larchmont Community Condominium VI, The New Larchmont Community Condominium VII and granted or reserved by grantor as grantor under that certain Deed and Declaration of Covenants, Conditions and Restrictions from Grantor to Larchmont Condominium Group dated January 27, 1984 and recorded at Deed Records 84-036-A01, Lucas County, Ohio Records, which rights and obligations the Grantee hereby accepts and agrees to perform and rights under seven easements recorded in Volume 1434 of Deeds, page 513.

Permanent Parcel No.: 09-85211 (as to Condominium I, Bldg. 14, Unit 1)

Permanent Parcel No.: 09-85212 (as to Condominium I, Bldg. 14, Unit 2)

Permanent Parcel No.: 09-85213 (as to Condominium I, Bldg. 14, Unit 3)

Permanent Parcel No.: 09-85214 (as to Condominium I, Bldg. 14, Unit 4)

Permanent Parcel No.: 09-85215 (as to Condominium I, Bldg. 14, Unit 5)

Permanent Parcel No.: 09-85216 (as to Condominium I, Bldg. 14, Unit 6)

Permanent Parcel No.: 09-85217 (as to Condominium I, Bldg. 14, Unit 7)

Permanent Parcel No.: 09-85218 (as to Condominium I, Bldg. 14, Unit 8)

Permanent Parcel No.: 09-85219 (as to Condominium I, Bldg. 14, Unit 9)

Permanent Parcel No.: 09-85220 (as to Condominium I, Bldg. 14, Unit 10)

Permanent Parcel No.: 09-85221 (as to Condominium I, Bldg. 14, Unit 11)

Permanent Parcel No.: 09-85222 (as to Condominium I, Bldg. 14, Unit 12)

Permanent Parcel No.: 09-85223 (as to Condominium I, Bldg. 14, Unit 13)

Permanent Parcel No.: 09-85224 (as to Condominium I, Bldg. 14, Unit 14)

Permanent Parcel No.: 09-85225 (as to Condominium I, Bldg. 14, Unit 15)

Permanent Parcel No.: 09-85226 (as to Condominium I, Bldg. 14, Unit 16)

Permanent Parcel No.: 09-85230 (as to Condominium I, Bldg. 15, Unit1)

Permanent Parcel No.: 09-85231 (as to Condominium I, Bldg. 15, Unit 2)

Permanent Parcel No.: 09-85232 (as to Condominium I, Bldg. 15, Unit 3)

Permanent Parcel No.: 09-85233 (as to Condominium I, Bldg. 15, Unit 4)

Permanent Parcel No.: 09-85234 (as to Condominium I, Bldg. 15, Unit 5)

Permanent Parcel No.: 09-85235 (as to Condominium I, Bldg. 15, Unit 6)

Permanent Parcel No.: 09-85236 (as to Condominium I, Bldg. 15, Unit 7)

Permanent Parcel No.: 09-85237 (as to Condominium I, Bldg. 15, Unit 8)

Permanent Parcel No.: 09-85238 (as to Condominium I, Bldg. 15, Unit 9)

Permanent Parcel No.: 09-85239 (as to Condominium I, Bldg. 15, Unit 10)

Permanent Parcel No.: 09-85240 (as to Condominium I, Bldg. 15, Unit 11)

Permanent Parcel No.: 09-85241 (as to Condominium I, Bldg. 15, Unit 12)

Permanent Parcel No.: 09-85242 (as to Condominium I, Bldg. 15, Unit 13)

Permanent Parcel No.: 09-85243 (as to Condominium I, Bldg. 15, Unit 14)

Permanent Parcel No.: 09-85244 (as to Condominium I, Bldg. 15, Unit 15)

Permanent Parcel No.: 09-85245 (as to Condominium I, Bldg. 15, Unit 16)

Permanent Parcel No.: 09-85249 (as to Condominium II, Bldg. 9, Unit 1)

Permanent Parcel No.: 09-85250 (as to Condominium II, Bldg. 9, Unit 2)

Permanent Parcel No.: 09-85251 (as to Condominium II, Bldg. 9, Unit 3)

Permanent Parcel No.: 09-85252 (as to Condominium II, Bldg. 9, Unit 4)

Permanent Parcel No.: 09-85253 (as to Condominium II, Bldg. 9, Unit 5)

Permanent Parcel No.: 09-85254 (as to Condominium II, Bldg. 9, Unit 6)

Permanent Parcel No.: 09-85255 (as to Condominium II, Bldg. 9, Unit 7)

Permanent Parcel No.: 09-85256 (as to Condominium II, Bldg. 9, Unit 8)

Permanent Parcel No.: 09-85257 (as to Condominium II, Bldg. 9, Unit 9)

Permanent Parcel No.: 09-85258 (as to Condominium II, Bldg. 9, Unit 10)

Permanent Parcel No.: 09-85259 (as to Condominium II, Bldg. 9, Unit 11)

Permanent Parcel No.: 09-85260 (as to Condominium II, Bldg. 9, Unit 12)

Permanent Parcel No.: 09-85261 (as to Condominium II, Bldg. 9, Unit 13)

Permanent Parcel No.: 09-85262 (as to Condominium II, Bldg. 9, Unit 14)

Permanent Parcel No.: 09-85263 (as to Condominium II, Bldg. 9, Unit 15)

Permanent Parcel No.: 09-85264 (as to Condominium II, Bldg. 9, Unit 16)

Permanent Parcel No.: 09-85267 (as to Condominium II, Bldg. 10, Unit 1)

Permanent Parcel No.: 09-85268 (as to Condominium II, Bldg. 10, Unit 2)

Permanent Parcel No.: 09-85269 (as to Condominium II, Bldg. 10, Unit 3)

Permanent Parcel No.: 09-85270 (as to Condominium II, Bldg. 10, Unit 4)

Permanent Parcel No.: 09-85271 (as to Condominium II, Bldg. 10, Unit 5)

Permanent Parcel No.: 09-85272 (as to Condominium II, Bldg. 10, Unit 6)

Permanent Parcel No.: 09-85273 (as to Condominium II, Bldg. 10, Unit 7)

Permanent Parcel No.: 09-85274 (as to Condominium II, Bldg. 10, Unit 8)

Permanent Parcel No.: 09-85275 (as to Condominium II, Bldg. 10, Unit 9)

Permanent Parcel No.: 09-85276 (as to Condominium II, Bldg. 10, Unit 10)

Permanent Parcel No.: 09-85277 (as to Condominium II, Bldg. 10, Unit 11)

Permanent Parcel No.: 09-85278 (as to Condominium II, Bldg. 10, Unit 12)

Permanent Parcel No.: 09-85279 (as to Condominium II, Bldg. 10, Unit 13)

Permanent Parcel No.: 09-85280 (as to Condominium II, Bldg. 10, Unit 14)

Permanent Parcel No.: 09-85281 (as to Condominium II, Bldg. 10, Unit 15)

Permanent Parcel No.: 09-85282 (as to Condominium II, Bldg. 10, Unit 16)

Permanent Parcel No.: 09-85297 (as to Condominium II, Bldg. 11, Unit 1)

Permanent Parcel No.: 09-85298 (as to Condominium II, Bldg. 11, Unit 2)

Permanent Parcel No.: 09-85299 (as to Condominium II, Bldg. 11, Unit 3)

Permanent Parcel No.: 09-85300 (as to Condominium II, Bldg. 11, Unit 4)

Permanent Parcel No.: 09-85301 (as to Condominium II, Bldg. 11, Unit 5)

Permanent Parcel No.: 09-85302 (as to Condominium II, Bldg. 11, Unit 6)

Permanent Parcel No.: 09-85303 (as to Condominium II, Bldg. 11, Unit 7)

Permanent Parcel No.: 09-85304 (as to Condominium II, Bldg. 11, Unit 8)

Permanent Parcel No.: 09-85305 (as to Condominium II, Bldg. 11, Unit 9)

Permanent Parcel No.: 09-85306 (as to Condominium II, Bldg. 11, Unit 10)

Permanent Parcel No.: 09-85307 (as to Condominium II, Bldg. 11, Unit 11)

Permanent Parcel No.: 09-85308 (as to Condominium II, Bldg. 11, Unit 12)

Permanent Parcel No.: 09-85309 (as to Condominium II, Bldg. 11, Unit 13)

Permanent Parcel No.: 09-85310 (as to Condominium II, Bldg. 11, Unit 14)

Permanent Parcel No.: 09-85311 (as to Condominium II, Bldg. 11, Unit 15)

Permanent Parcel No.: 09-85312 (as to Condominium II, Bldg. 11, Unit 15)

Permanent Parcel No.: 09-85315 (as to Condominium III, Bldg. 12, Unit 1)

Permanent Parcel No.: 09-85316 (as to Condominium III, Bldg. 12, Unit 2)

Permanent Parcel No.: 09-85317 (as to Condominium III, Bldg. 12, Unit 3)

Permanent Parcel No.: 09-85318 (as to Condominium III, Bldg. 12, Unit 4)

Permanent Parcel No.: 09-85319 (as to Condominium III, Bldg. 12, Unit 5)

Permanent Parcel No.: 09-85320 (as to Condominium III, Bldg. 12, Unit 6)

Permanent Parcel No.: 09-85321 (as to Condominium III, Bldg. 12, Unit 7)

Permanent Parcel No.: 09-85322 (as to Condominium III, Bldg. 12, Unit 8)

Permanent Parcel No.: 09-85323 (as to Condominium III, Bldg. 12, Unit 9)

Permanent Parcel No.: 09-85324 (as to Condominium III, Bldg. 12, Unit 10)

Permanent Parcel No.: 09-85325 (as to Condominium III, Bldg. 12, Unit 11)

Permanent Parcel No.: 09-85326 (as to Condominium III, Bldg. 12, Unit 12)

Permanent Parcel No.: 09-85327 (as to Condominium III, Bldg. 12, Unit 13)

Permanent Parcel No.: 09-85328 (as to Condominium III, Bldg. 12, Unit 14)

Permanent Parcel No.: 09-85329 (as to Condominium III, Bldg. 12, Unit 15)

Permanent Parcel No.: 09-85330 (as to Condominium III, Bldg. 12, Unit 16)

Permanent Parcel No.: 09-85334 (as to Condominium III, Bldg. 13, Unit 1)

Permanent Parcel No.: 09-85335 (as to Condominium III, Bldg. 13, Unit 2)

Permanent Parcel No.: 09-85336 (as to Condominium III, Bldg. 13, Unit 3)

Permanent Parcel No.: 09-85337 (as to Condominium III, Bldg. 13, Unit 4)

Permanent Parcel No.: 09-85338 (as to Condominium III, Bldg. 13, Unit 5)

Permanent Parcel No.: 09-85339 (as to Condominium III, Bldg. 13, Unit 6)

Permanent Parcel No.: 09-85340 (as to Condominium III, Bldg. 13, Unit 7)

Permanent Parcel No.: 09-85341 (as to Condominium III, Bldg. 13, Unit 8)

Permanent Parcel No.: 09-85342 (as to Condominium III, Bldg. 13, Unit 9)

Permanent Parcel No.: 09-85343 (as to Condominium III, Bldg. 13, Unit 10)

Permanent Parcel No.: 09-85344 (as to Condominium III, Bldg. 13, Unit 11)

Permanent Parcel No.: 09-85345 (as to Condominium III, Bldg. 13, Unit 12)

Permanent Parcel No.: 09-85346 (as to Condominium III, Bldg. 13, Unit 13)

Permanent Parcel No.: 09-85347 (as to Condominium III, Bldg. 13, Unit 14)

Permanent Parcel No.: 09-85348 (as to Condominium III, Bldg. 13, Unit 15)

Permanent Parcel No.: 09-85349 (as to Condominium III, Bldg. 13, Unit 16)

Permanent Parcel No.: 09-85350 (as to Condominium III, Bldg. 28, Unit 1)

Permanent Parcel No.: 09-85351 (as to Condominium III, Bldg. 28, Unit 2)

Permanent Parcel No.: 09-85352 (as to Condominium III, Bldg. 28, Unit 3)

Permanent Parcel No.: 09-85353 (as to Condominium III, Bldg. 28, Unit 4)

Permanent Parcel No.: 09-85354 (as to Condominium III, Bldg. 28, Unit 5)

Permanent Parcel No.: 09-85355 (as to Condominium III, Bldg. 28, Unit 6)

Permanent Parcel No.: 09-85356 (as to Condominium III, Bldg. 28, Unit 7)

Permanent Parcel No.: 09-85357 (as to Condominium III, Bldg. 28, Unit 8)

Permanent Parcel No.: 09-85358 (as to Condominium III, Bldg. 28, Unit 9)

Permanent Parcel No.: 09-85359 (as to Condominium III, Bldg. 28, Unit 10)

Permanent Parcel No.: 09-85360 (as to Condominium III, Bldg. 28, Unit 11)

Permanent Parcel No.: 09-85361 (as to Condominium III, Bldg. 28, Unit 12)

Permanent Parcel No.: 09-85362 (as to Condominium III, Bldg. 28, Unit 13)

Permanent Parcel No.: 09-85363 (as to Condominium III, Bldg. 28, Unit 14)

Permanent Parcel No.: 09-85364 (as to Condominium III, Bldg. 28, Unit 15)

Permanent Parcel No.: 09-85365 (as to Condominium III, Bldg. 28, Unit 16)

Permanent Parcel No.: 09-85370 (as to Condominium III, Bldg. 29, Unit 1)

Permanent Parcel No.: 09-85371 (as to Condominium III, Bldg. 29, Unit 2)

Permanent Parcel No.: 09-85372 (as to Condominium III, Bldg. 29, Unit 3)

Permanent Parcel No.: 09-85373 (as to Condominium III, Bldg. 29, Unit 4)

Permanent Parcel No.: 09-85374 (as to Condominium III, Bldg. 29, Unit 5)

Permanent Parcel No.: 09-85375 (as to Condominium III, Bldg. 29, Unit 6)

Permanent Parcel No.: 09-85376 (as to Condominium III, Bldg. 29, Unit 7)

Permanent Parcel No.: 09-85377 (as to Condominium III, Bldg. 29, Unit 8)

Permanent Parcel No.: 09-85378 (as to Condominium III, Bldg. 29, Unit 9)

Permanent Parcel No.: 09-85379 (as to Condominium III, Bldg. 29. Unit 10)

Permanent Parcel No.: 09-85380 (as to Condominium III, Bldg. 29, Unit 11)

Permanent Parcel No.: 09-85381 (as to Condominium III, Bldg. 29, Unit 12)

Permanent Parcel No.: 09-85382 (as to Condominium III, Bldg. 29, Unit 13)

Permanent Parcel No.: 09-85383 (as to Condominium III, Bldg. 29, Unit 14)

Permanent Parcel No.: 09-85384 (as to Condominium III, Bldg. 29, Unit 15)

Permanent Parcel No.: 09-85385 (as to Condominium III, Bldg. 29, Unit 16)

Permanent Parcel No.: 09-85390 (as to Condominium IV, Bldg. 1, Unit 1)

Permanent Parcel No.: 09-85391 (as to Condominium IV, Bldg. 1, Unit 2}

Permanent Parcel No.: 09-85392 (as to Condominium IV, Bldg. 1, Unit 3}

Permanent Parcel No.: 09-85393 (as to Condominium IV, Bldg. 1, Unit 4)

Permanent Parcel No.: 09-85394 (as to Condominium IV, Bldg. 1, Unit 5)

Permanent Parcel No.: 09-85395 (as to Condominium IV, Bldg. 1, Unit 6)

Permanent Parcel No.: 09-85396 (as to Condominium IV, Bldg. 1, Unit 7)

Permanent Parcel No.: 09-85397 (as to Condominium IV, Bldg. 1, Unit 8)

Permanent Parcel No.: 09-85398 (as to Condominium IV, Bldg. 1, Unit 9)

Permanent Parcel No.: 09-85399 (as to Condominium IV, Bldg. 1, Unit 10)

Permanent Parcel No.: 09-85400 (as to Condominium IV, Bldg. 1, Unit 11)

Permanent Parcel No.: 09-85401 (as to Condominium IV, Bldg. 1, Unit 12)

Permanent Parcel No.: 09-85402 (as to Condominium IV, Bldg. 1, Unit 13)

Permanent Parcel No.: 09-85403 (as to Condominium IV, Bldg. 1, Unit 14)

Permanent Parcel No.: 09-85404 (as to Condominium IV, Bldg. 1, Unit 15)

Permanent Parcel No.: 09-85405 (as to Condominium IV, Bldg. 1, Unit 16)

Permanent Parcel No.: 09-85406 (as to Condominium IV, Bldg. 2, Unit1)

Permanent Parcel No.: 09-85407 (as to Condominium IV, Bldg. 2, Unit 2)

Permanent Parcel No.: 09-85408 (as to Condominium IV, Bldg. 2, Unit 3)

Permanent Parcel No.: 09-85409 (as to Condominium IV, Bldg. 2, Unit 4)

Permanent Parcel No.: 09-85410 (as to Condominium IV, Bldg. 2, Unit 5)

Permanent Parcel No.: 09-85411 (as to Condominium IV, Bldg. 2, Unit 6)

Permanent Parcel No.: 09-85412 (as to Condominium IV, Bldg. 2, Unit 7)

Permanent Parcel No.: 09-85413 (as to Condominium IV, Bldg. 2, Unit 8)

Permanent Parcel No.: 09-85414 (as to Condominium IV, Bldg. 2, Unit 9)

Permanent Parcel No.: 09-85415 (as to Condominium IV, Bldg. 2, Unit 10)

Permanent Parcel No.: 09-85416 (as to Condominium IV, Bldg. 2, Unit 11)

Permanent Parcel No.: 09-85417 (as to Condominium IV, Bldg. 2, Unit 12)

Permanent Parcel No.: 09-85418 (as to Condominium IV, Bldg. 2, Unit 13)

Permanent Parcel No.: 09-85419 (as to Condominium IV, Bldg. 2, Unit 14)

Permanent Parcel No.: 09-85420 (as to Condominium IV, Bldg. 2, Unit 15)

Permanent Parcel No.: 09-85421 (as to Condominium IV, Bldg. 2, Unit 16)

Permanent Parcel No.: 09-85422 (as to Condominium IV, Bldg. 3, Unit 1)

Permanent Parcel No.: 09-85423 (as to Condominium IV, Bldg. 3, Unit 2)

Permanent Parcel No.: 09-85424 (as to Condominium IV, Bldg. 3, Unit 3)

Permanent Parcel No.: 09-85425 (as to Condominium IV, Bldg. 3. Unit 4)

Permanent Parcel No.: 09-85426 (as to Condominium IV, Bldg. 3, Unit 5)

Permanent Parcel No.: 09-85427 (as to Condominium IV, Bldg. 3, Unit 6)

Permanent Parcel No.: 09-85428 (as to Condominium IV, Bldg. 3, Unit 7)

Permanent Parcel No.: 09-85429 (as to Condominium IV, Bldg. 3, Unit 8)

Permanent Parcel No.: 09-85430 (as to Condominium IV, Bldg. 3, Unit 9)

Permanent Parcel No.: 09-85431 (as to Condominium IV, Bldg. 3, Unit 10)

Permanent Parcel No.: 09-85432 (as to Condominium IV, Bldg. 3, Unit 11)

Permanent Parcel No.: 09-85433 (as to Condominium IV, Bldg. 3, Unit 12)

Permanent Parcel No.: 09-85434 (as to Condominium IV, Bldg. 3, Unit 13)

Permanent Parcel No.: 09-85435 (as to Condominium IV, Bldg. 3, Unit 14)

Permanent Parcel No.: 09-85436 (as to Condominium IV, Bldg. 3, Unit 15)

Permanent Parcel No.: 09-85437 (as to Condominium IV, Bldg. 3, Unit 16)

Permanent Parcel No.: 09-85438 (as to Condominium V, Bldg. 22, Unit 1)

Permanent Parcel No.: 09-85439 (as to Condominium V, Bldg. 22, Unit 2)

Permanent Parcel No.: 09-85440 (as to Condominium V, Bldg. 22, Unit 3)

Permanent Parcel No.: 09-85441 (as to Condominium V, Bldg. 22, Unit 4)

Permanent Parcel No.: 09-85442 (as to Condominium V, Bldg. 22, Unit 5)

Permanent Parcel No.: 09-85443 (as to Condominium V, Bldg. 22, Unit 6)

Permanent Parcel No.: 09-85444 (as to Condominium V, Bldg. 22, Unit 7)

Permanent Parcel No.: 09-85445 (as to Condominium V, Bldg. 22, Unit 8)

Permanent Parcel No.: 09-85446 (as to Condominium V, Bldg. 22, Unit 9)

Permanent Parcel No.: 09-85447 (as to Condominium V, Bldg. 22, Unit 10)

Permanent Parcel No.: 09-85448 (as to Condominium V, Bldg. 22, Unit 11)

Permanent Parcel No.: 09-85449 (as to Condominium V, Bldg. 22, Unit 12)

Permanent Parcel No.: 09-85450 (as to Condominium V, Bldg. 22, Unit 13)

Permanent Parcel No.: 09-85451 (as to Condominium V, Bldg. 22, Unit 14)

Permanent Parcel No.: 09-85452 (as to Condominium V, Bldg. 22, Unit 15)

Permanent Parcel No.: 09-85453 (as to Condominium V, Bldg. 22, Unit 16)

Permanent Parcel No.: 09-85454 (as to Condominium V, Bldg. 23, Unit 1)

Permanent Parcel No.: 09-85455 (as to Condominium V, Bldg. 23, Unit 2)

Permanent Parcel No.: 09-85456 (as to Condominium V, Bldg. 23, Unit 3)

Permanent Parcel No.: 09-85457 (as to Condominium V, Bldg. 23, Unit 4)

Permanent Parcel No.: 09-35458 (as to Condominium V, Bldg. 23, Unit 5)

Permanent Parcel No.: 09-85459 (as to Condominium V, Bldg. 23, Unit 6)

Permanent Parcel No.: 09-85460 (as to Condominium V, Bldg. 23, Unit 7)

Permanent Parcel No.: 09-85461 (as to Condominium V, Bldg. 23, Unit 8)

Permanent Parcel No.: 09-85462 (as to Condominium V, Bldg. 23, Unit 9)

Permanent Parcel No.: 09-85463 (as to Condominium V, Bldg. 23, Unit 10)

Permanent Parcel No.: 09-85464 (as to Condominium V, Bldg. 23, Unit 11)

Permanent Parcel No.: 09-85465 (as to Condominium V, Bldg. 23, Unit 12)

Permanent Parcel No.: 09-85466 (as to Condominium V, Bldg. 23, Unit 13)

Permanent Parcel No.: 09-85467 (as to Condominium V, Bldg. 23, Unit 14)

Permanent Parcel No.: 09-85468 (as to Condominium V, Bldg. 23, Unit 15)

Permanent Parcel No.: 09-85469 (as to Condominium V, Bldg. 23, Unit 16)

Permanent Parcel No.: 09-85470 (as to Condominium V, Bldg. 24, Unit 1)

Permanent Parcel No.: 09-85471 (as to Condominium V, Bldg. 24, Unit 2)

Permanent Parcel No.: 09-85472 (as to Condominium V, Bldg. 24, Unit 3)

Permanent Parcel No.: 09-85473 (as to Condominium V, Bldg. 24, Unit 4)

Permanent Parcel No.: 09-85474 (as to Condominium V, Bldg. 24, Unit 5)

Permanent Parcel No.: 09-85475 (as to Condominium V, Bldg. 24, Unit 5)

Permanent Parcel No.: 09-85476 (as to Condominium V, Bldg. 24, Unit 7)

Permanent Parcel No.: 09-85477 (as to Condominium V, Bldg. 24, Unit 8)

Permanent Parcel No.: 09-85478 (as to Condominium V, Bldg. 24, Unit 9)

Permanent Parcel No.: 09-85479 (as to Condominium V, Bldg. 24, Unit 10)

Permanent Parcel No.: 09-85480 (as to Condominium V, Bldg. 24, Unit 11)

Permanent Parcel No.: 09-85481 (as to Condominium V, Bldg. 24, Unit 12)

Permanent Parcel No.: 09-85482 (as to Condominium V, Bldg. 24, Unit 13)

Permanent Parcel No.: 09-85483 (as to Condominium V, Bldg. 24, Unit 14)

Permanent Parcel No.: 09-85484 (as to Condominium V, Bldg. 24, Unit 15)

Permanent Parcel No.: 09-85485 (as to Condominium V, Bldg. 24, Unit 16)

Permanent Parcel No.: 09-85486 (as to Condominium VI, Bldg. 4, Unit 1)

Permanent Parcel No.: 09-85487 (as to Condominium VI, Bldg. 4, Unit 2)

Permanent Parcel No.: 09-85488 (as to Condominium VI, Bldg. 4, Unit 3)

Permanent Parcel No.: 09-85489 (as to Condominium VI, Bldg. 4, Unit 4)

Permanent Parcel No.: 09-85490 (as to Condominium VI, Bldg. 4, Unit 5)

Permanent Parcel No.: 09-85491 (as to Condominium VI, Bldg. 4, Unit 6)

Permanent Parcel No.: 09-85492 (as to Condominium VI, Bldg. 4, Unit 7)

Permanent Parcel No.: 09-85493 (as to Condominium VI, Bldg. 4, Unit 8)

Permanent Parcel No.: 09-85494 (as to Condominium VI, Bldg. 4, Unit 9)

Permanent Parcel No.: 09-85495 (as to Condominium VI, Bldg. 4, Unit 10)

Permanent Parcel No.: 09-85496 (as to Condominium VI, Bldg. 4, Unit 11)

Permanent Parcel No.: 09-85497 (as to Condominium VI, Bldg. 4, Unit 12)

Permanent Parcel No.: 09-85498 (as to Condominium VI, Bldg. 4, Unit 13)

Permanent Parcel No.: 09-85499 (as to Condominium VI, Bldg. 4, Unit 14)

Permanent Parcel No.: 09-85500 (as to Condominium VI, Bldg. 4, Unit 15)

Permanent Parcel No.: 09-85501 (as to Condominium VI, Bldg. 4, Unit 16)

Permanent Parcel No.: 09-85502 (as to Condominium VI, Bldg. 5, Unit 1)

Permanent Parcel No.: 09-85503 (as to Condominium VI, Bldg. 5, Unit 2)

Permanent Parcel No.: 09-85504 (as to Condominium VI, Bldg. 5, Unit 3)

Permanent Parcel No.: 09-85505 (as to Condominium VI, Bldg. 5, Unit 4)

Permanent Parcel No.: 09-85506 (as to Condominium VI, Bldg. 5, Unit 5)

Permanent Parcel No.: 09-85507 (as to Condominium VI, Bldg. 5, Unit 6)

Permanent Parcel No.: 09-85508 (as to Condominium VI, Bldg. 5, Unit 7)

Permanent Parcel No.: 09-85509 (as to Condominium VI, Bldg. 5, Unit 8)

Permanent Parcel No.: 09-85510 (as to Condominium VI, Bldg. 5, Unit 9)

Permanent Parcel No.: 09-85511 (as to Condominium VI, Bldg. 5, Unit 10)

Permanent Parcel No.: 09-85512 (as to Condominium VI, Bldg. 5, Unit 11)

Permanent Parcel No.: 09-85513 (as to Condominium VI, Bldg. 5, Unit 12)

Permanent Parcel No.: 09-85514 (as to Condominium VI, Bldg. 5, Unit 13)

Permanent Parcel No.: 09-85515 (as to Condominium VI, Bldg. 5, Unit 14)

Permanent Parcel No.: 09-85516 (as to Condominium VI, Bldg. 5, Unit 15)

Permanent Parcel No.: 09-85517 (as to Condominium VI, Bldg. 5, Unit 16)

Permanent Parcel No.: 09-85518 (as to Condominium VI, Bldg. 5-1/2, Unit 1)

Permanent Parcel No.: 09-85519 (as to Condominium VI, Bldg. 5-1/2, Unit 2)

Permanent Parcel No.: 09-85520 (as to Condominium VI, Bldg. 5-1/2, Unit 3)

Permanent Parcel No.: 09-85521 (as to Condominium VI, Bldg. 5-1/2, Unit 4)

Permanent Parcel No.: 09-85522 (as to Condominium VI, Bldg. 5-1/2, Unit 5)

Permanent Parcel No.: 09-85523 (as to Condominium VI, Bldg. 5-1/2, Unit 6)

Permanent Parcel No.: 09-85524 (as to Condominium VI, Bldg. 5-1/2, Unit 7)

Permanent Parcel No.: 09-85525 (as to Condominium VI, Bldg. 5-1l2, Unit 8)

Permanent Parcel No.: 09-85526 (as to Condominium VI, Bldg. 6, Unit 1)

Permanent Parcel No.: 09-85527 (as to Condominium VI, Bldg. 6, Unit 2)

Permanent Parcel No.: 09-85528 (as to Condominium VI, Bldg. 6, Unit 3)

Permanent Parcel No.: 09-85529 (as to Condominium VI, Bldg. 6, Unit 4)

Permanent Parcel No.: 09-85530 (as to Condominium VI, Bldg. 6, Unit 5)

Permanent Parcel No.: 09-85531 (as to Condominium VI, Bldg. 6, Unit 6)

Permanent Parcel No.: 09-85532 (as to Condominium VI, Bldg. 6, Unit 7)

Permanent Parcel No.: 09-85533 (as to Condominium VI, Bldg. 6, Unit 8)

Permanent Parcel No.: 09-85534 (as to Condominium VI, Bldg. 6, Unit 9)

Permanent Parcel No.: 09-85535 (as to Condominium VI, Bldg. 6, Unit 10)

Permanent Parcel No.: 09-85536 (as to Condominium VI, Bldg. 6, Unit 11)

Permanent Parcel No.: 09-85537 (as to Condominium VI, Bldg. 6, Unit 12)

Permanent Parcel No.: 09-85538 (as to Condominium VI, Bldg. 6, Unit 13)

Permanent Parcel No.: 08-85539 (as to Condominium VI, Bldg. 6, Unit 14)

Permanent Parcel No.: 09-85540 (as to Condominium VI, Bldg. 6, Unit 15)

Permanent Parcel No.: 09-85541 (as to Condominium VI, Bldg. 6, Unit 16)

Permanent Parcel No.: 09-85542 (as to Condominium VI, Bldg. 7, Unit 1)

Permanent Parcel No.: 09-85543 (as to Condominium VI, Bldg. 7, Unit 2)

Permanent Parcel No.: 09-85544 (as to Condominium VI, Bldg. 7, Unit 3)

Permanent Parcel No.: 09-85545 (as to Condominium VI, Bldg. 7, Unit 4)

Permanent Parcel No.: 09-85546 (as to Condominium VI, Bldg. 7, Unit 5)

Permanent Parcel No.: 09-85547 (as to Condominium VI, Bldg. 7, Unit 6)

Permanent Parcel No.: 09-85548 (as to Condominium VI, Bldg. 7, Unit 7)

Permanent Parcel No.: 09-85549 (as to Condominium VI, Bldg. 7, Unit 8)

Permanent Parcel No.: 09-85550 (as to Condominium VI, Bldg. 7, Unit 9)

Permanent Parcel No.: 09-85551 (as to Condominium VI, Bldg. 7, Unit 10)

Permanent Parcel No.: 09-85552 (as to Condominium VI, Bldg. 7, Unit 11)

Permanent Parcel No.: 09-85553 (as to Condominium VI, Bldg. 7, Unit 12)

Permanent Parcel No.: 09-85554 (as to Condominium VI, Bldg. 7, Unit 13)

Permanent Parcel No.: 09-85555 (as to Condominium VI, Bldg. 7, Unit 14)

Permanent Parcel No.: 09-85556 (as to Condominium VI, Bldg. 7, Unit 15)

Permanent Parcel No.: 09-85557 (as to Condominium VI, Bldg. 7, Unit 16)

Permanent Parcel No.: 09-85558 (as to Condominium VI, Bldg. 8, Unit 1)

Permanent Parcel No.: 09-85559 (as to Condominium VI, Bldg. 8, Unit 2)

Permanent Parcel No.: 09-85560 (as to Condominium VI, Bldg. 8, Unit 3)

Permanent Parcel No.: 09-85561 (as to Condominium VI, Bldg. 8, Unit 4)

Permanent Parcel No.: 09-85562 (as to Condominium VI, Bldg. 8, Unit 5)

Permanent Parcel No.: 09-85563 (as to Condominium VI, Bldg. 8, Unit 6)

Permanent Parcel No.: 09-85564 (as to Condominium VI, Bldg. 8, Unit 7)

Permanent Parcel No.: 09-85565 (as to Condominium VI, Bldg. 8, Unit 8)

Permanent Parcel No.: 09-85566 (as to Condominium VI, Bldg. 8, Unit 9)

Permanent Parcel No.: 09-85567 (as to Condominium VI, Bldg. 8, Unit 10)

Permanent Parcel No.: 09-85568 (as to Condominium VI, Bldg. 8, Unit 11)

Permanent Parcel No.: 09-85569 (as to Condominium VI, Bldg. 8, Unit 12)

Permanent Parcel No.: 09-85570 (as to Condominium VI, Bldg. 8, Unit 13)

Permanent Parcel No.: 09-85571 (as to Condominium VI, Bldg. 8, Unit 14)

Permanent Parcel No.: 09-85572 (as to Condominium VI, Bldg. 8, Unit 15)

Permanent Parcel No.: 09-85573 (as to Condominium VI, Bldg. 8, Unit 16)

Permanent Parcel No.: 09-85574 (as to Condominium VII, Bldg. 16, Unit 1)

Permanent Parcel No.: 09-85575 (as to Condominium VII, Bldg. 16, Unit 2)

Permanent Parcel No.: 09-85576 (as to Condominium VII, Bldg. 16, Unit 3)

Permanent Parcel No.: 09-85577 (as to Condominium VII, Bldg. 16, Unit 4)

Permanent Parcel No.: 09-85578 (as to Condominium VII, Bldg. 16, Unit 5)

Permanent Parcel No.: 09-85579 (as to Condominium VII, Bldg. 16, Unit 6)

Permanent Parcel No.: 09-85580 (as to Condominium VII, Bldg. 16, Unit 7)

Permanent Parcel No.: 09-85581 (as to Condominium VII, Bldg. 16, Unit 8)

Permanent Parcel No.: 09-85582 (as to Condominium VII, Bldg. 16, Unit 9)

Permanent Parcel N0.: 09-85583 (as to Condominium VII, Bldg. 16, Unit 10)

Permanent Parcel No.: 09-85584 (as to Condominium VII, Bldg. 16, Unit 11)

Permanent Parcel No.: 09-85585 (as to Condominium VII, Bldg. 16, Unit 12)

Permanent Parcel No.: 09-85586 (as to Condominium VII, Bldg. 16, Unit 13)

Permanent Parcel No.: 09-85587 (as to Condominium VII, Bldg. 16, Unit 14)

Permanent Parcel No.: 09-85588 (as to Condominium VII, Bldg. 16, Unit 15)

Permanent Parcel No.: 09-85589 (as to Condominium VII, Bldg. 16, Unit 16)

Permanent Parcel No.: 09-85590 (as to Condominium VII, Bldg. 17, Unit 1)

Permanent Parcel No.: 09-85591 (as to Condominium VII, Bldg. 17, Unit 2)

Permanent Parcel No.: 09-85592 (as to Condominium VII, Bldg. 17, Unit 3)

Permanent Parcel No.: 09-85593 (as to Condominium VII, Bldg. 17, Unit 4)

Permanent Parcel No.: 09-85594 (as to Condominium VII, Bldg. 17, Unit 5)

Permanent Parcel No.: 09-85595 (as to Condominium VII, Bldg. 17, Unit 6)

Permanent Parcel No.: 09-85596 (as to Condominium VII, Bldg. 17, Unit 7)

Permanent Parcel No.: 09-85597 (as to Condominium VII, Bldg. 17, Unit 8)

Permanent Parcel No.: 09-85598 (as to Condominium VII, Bldg. 17, Unit 9)

Permanent Parcel No.: 09-85599 (as to Condominium VII, Bldg. 17, Unit 10)

Permanent Parcel No.: 09-85600 (as to Condominium VII, Bldg. 17, Unit 11)

Permanent Parcel No.: 09-85601 (as to Condominium VII, Bldg. 17, Unit 12)

Permanent Parcel No.: 09-85602 (as to Condominium VII, Bldg. 17, Unit 13)

Permanent Parcel No.: 09-85603 (as to Condominium VII, Bldg. 17, Unit 14)

Permanent Parcel No.: 09-85604 (as to Condominium VII, Bldg. 17, Unit 15)

Permanent Parcel No.: 09-85605 (as to Condominium VII, Bldg. 17, Unit 16)

Permanent Parcel No.: 09-85606 (as to Condominium VII, Bldg. 18, Unit 1)

Permanent Parcel No.: 09-85607 (as to Condominium VII, Bldg. 18, Unit 2)

Permanent Parcel No.: 09-85608 (as to Condominium VII, Bldg. 18, Unit 3)

Permanent Parcel No.: 09-85609 (as to Condominium VII, Bldg. 18, Unit 4)

Permanent Parcel No.: 09-85610 (as to Condominium VII, Bldg. 18, Unit 5)

Permanent Parcel No.: 09-85611 (as to Condominium VII, Bldg. 18, Unit 6)

Permanent Parcel No.: 09-85612 (as to Condominium VII, Bldg. 18, Unit 7)

Permanent Parcel No.: 09-85613 (as to Condominium VII, Bldg. 18, Unit 8)

Permanent Parcel No.: 09-85614 (as to Condominium VII, Bldg. 18, Unit 9)

Permanent Parcel No.: 09-85615 (as to Condominium VII, Bldg. 18, Unit 10)

Permanent Parcel No.: 09-85616 (as to Condominium VII, Bldg. 18, Unit 11)

Permanent Parcel No.: 09-85617 (as to Condominium VII, Bldg. 18, Unit 12)

Permanent Parcel No.: 09-85618 (as to Condominium VII, Bldg. 18, Unit 13)

Permanent Parcel No.: 09-85619 (as to Condominium VII, Bldg. 18, Unit 14)

Permanent Parcel No.: 09-85620 (as to Condominium VII, Bldg. 18, Unit 15)

Permanent Parcel No.: 09-85621 (as to Condominium VII, Bldg. 18, Unit 16)

Permanent Parcel No.: 09-85622 (as to Condominium VII, Bldg. 19, Unit 1)

Permanent Parcel No.: 09-85623 (as to Condominium VII, Bldg. 19, Unit 2)

Permanent Parcel No.: 09-85624 (as to Condominium VII, Bldg. 19, Unit 3)

Permanent Parcel No.: 09-85625 (as to Condominium VII, Bldg. 19, Unit 4)

Permanent Parcel No.: 09-85626 (as to Condominium VII, Bldg. 19, Unit 5)

Permanent Parcel No.: 09-85627 (as to Condominium VII, Bldg. 19, Unit 6)

Permanent Parcel No.: 09-85628 (as to Condominium VII, Bldg. 19, Unit 7)

Permanent Parcel No.: 09-85629 (as to Condominium VII, Bldg. 19, Unit 8)

Permanent Parcel No.: 09-85630 (as to Condominium VII, Bldg. 19, Unit 9)

Permanent Parcel No.: 09-85631 (as to Condominium VII, Bldg. 19, Unit 10)

Permanent Parcel No.: 09-85632 (as to Condominium VII, Bldg. 19, Unit 11)

Permanent Parcel No.: 09-85633 (as to Condominium VII, Bldg. 19, Unit 12)

Permanent Parcel No.: 09-85634 (as to Condominium VII, Bldg. 19, Unit 13)

Permanent Parcel No.: 09-85635 (as to Condominium VII, Bldg. 19, Unit 14)

Permanent Parcel No.: 09-85636 (as to Condominium VII, Bldg. 19, Unit 15)

Permanent Parcel No.: 09-85637 (as to Condominium VII, Bldg. 19, Unit 16)

Permanent Parcel No.: 09-85638 (as to Condominium VII, Bldg. 20, Unit 1)

Permanent Parcel No.: 09-85639 (as to Condominium VII, Bldg. 20, Unit 2)

Permanent Parcel No.: 09-85640 (as to Condominium VII, Bldg. 20, Unit 3)

Permanent Parcel No.: 09-85641 (as to Condominium VII, Bldg. 20, Unit 4)

Permanent Parcel No.: 09-85642 (as to Condominium VII, Bldg. 20, Unit 5)

Permanent Parcel No.: 09-85643 (as to Condominium VII, Bldg. 20, Unit 6)

Permanent Parcel No.: 09-85644 (as to Condominium VII, Bldg. 20, Unit 7)

Permanent Parcel No.: 09-85645 (as to Condominium VII, Bldg. 20, Unit 8)

Permanent Parcel No.: 09-85646 (as to Condominium VII, Bldg. 20, Unit 9)

Permanent Parcel No.: 09-85647 (as to Condominium VII, Bldg. 20, Unit 10)

Permanent Parcel No.: 09-85648 (as to Condominium VII, Bldg. 20, Unit 11)

Permanent Parcel No.: 09-85649 (as to Condominium VII, Bldg. 20, Unit 12)

Permanent Parcel No.: 09-85650 (as to Condominium VII, Bldg. 20, Unit 13)

Permanent Parcel No.: 09-85651 (as to Condominium VII, Bldg. 20, Unit 14)

Permanent Parcel No.: 09-85652 (as to Condominium VII, Bldg. 20, Unit 15)

Permanent Parcel No.: 09-85653 (as to Condominium VII, Bldg. 20, Unit 16)

Permanent Parcel No.: 09-85654 (as to Condominium VII, Bldg. 21, Unit 1)

Permanent Parcel No.: 09-85655 (as to Condominium VII, Bldg. 21, Unit 2)

Permanent Parcel No.: 09-85656 (as to Condominium VII, Bldg. 21, Unit 3)

Permanent Parcel No.: 09-85657 (as to Condominium VII, Bldg. 21, Unit 4)

Permanent Parcel No.: 09-85658 (as to Condominium VII, Bldg. 21, Unit 5)

Permanent Parcel No.: 09-85659 (as to Condominium VII, Bldg. 21, Unit 6)

Permanent Parcel No.: 09-85660 (as to Condominium VII, Bldg. 21, Unit 7)

Permanent Parcel No.: 09-85661 (as to Condominium VII, Bldg. 21, Unit 8)

Permanent Parcel No.: 09-85662 (as to Condominium VII, Bldg. 21, Unit 9)

Permanent Parcel No.: 09-85663 (as to Condominium VII, Bldg. 21, Unit 10)

Permanent Parcel No.: 09-85664 (as to Condominium VII, Bldg. 21, Unit 11)

Permanent Parcel No.: 09-85665 (as to Condominium VII, Bldg. 21, Unit 12)

Permanent Parcel No.: 09-85666 (as to Condominium VII, Bldg. 21, Unit 13)

Permanent Parcel No.: 09-85667 (as to Condominium VII, Bldg. 21, Unit 14)

Permanent Parcel No.: 09-85668 (as to Condominium VII, Bldg. 21, Unit 15)

Permanent Parcel No.: 09-85669 (as to Condominium VII, Bldg. 21, Unit 1)

Permanent Parcel No.: 09-85670 (as to Condominium VII, Bldg. 25, Unit 1)

Permanent Parcel No.: 09-85671 (as to Condominium VII, Bldg. 25, Unit 2)

Permanent Parcel No.: 09-85672 (as to Condominium VII, Bldg. 25, Unit 3)

Permanent Parcel No.: 09-85673 (as to Condominium VII, Bldg. 25, Unit 4)

Permanent Parcel No.: 09-85674 (as to Condominium VII, Bldg. 25, Unit 5)

Permanent Parcel No.: 09-85675 (as to Condominium VII, Bldg. 25, Unit 6)

Permanent Parcel No.: 09-85676 (as to Condominium VII, Bldg. 25, Unit 7)

Permanent Parcel No.: 09-85677 (as to Condominium VII, Bldg. 25, Unit 8)

Permanent Parcel No.: 09-85678 (as to Condominium VII, Bldg. 25, Unit 9)

Permanent Parcel No.: 09-85679 (as to Condominium VII, Bldg. 25, Unit 10)

Permanent Parcel No.: 09-85680 (as to Condominium VII, Bldg. 25, Unit 11)

Permanent Parcel No.: 09-85681 (as to Condominium VII, Bldg. 25, Unit 12)

Permanent Parcel No.: 09-85682 (as to Condominium VII, Bldg. 25, Unit 13)

Permanent Parcel No.: 09-85683 (as to Condominium VII, Bldg. 25, Unit 14)

Permanent Parcel No.: 09-85684 (as to Condominium VII, Bldg. 25, Unit 15)

Permanent Parcel No.: 09-85685 (as to Condominium VII, Bldg. 25, Unit 16)

Permanent Parcel No.: 09-85686 (as to Condominium VII, Bldg. 26, Unit 1)

Permanent Parcel No.: 09-85687 (as to Condominium VII, Bldg. 26, Unit 2)

Permanent Parcel No.: 09-85688 (as to Condominium VII, Bldg. 26, Unit 3)

Permanent Parcel No.: 09-85689 (as to Condominium VII, Bldg. 26, Unit 4)

Permanent Parcel No.: 09-85690 (as to Condominium VII, Bldg. 26, Unit 5)

Permanent Parcel No.: 09-85691 (as to Condominium VII, Bldg. 26, Unit 6)

Permanent Parcel No.: 09-85692 (as to Condominium VII, Bldg. 26, Unit 7)

Permanent Parcel No.: 09-85693 (as to Condominium VII, Bldg. 26, Unit 8)

Permanent Parcel No.: 09-85694 (as to Condominium VII, Bldg. 26, Unit 9)

Permanent Parcel No.: 09-85695 (as to Condominium VII, Bldg. 26, Unit 10)

Permanent Parcel No.: 09-85696 (as to Condominium VII, Bldg. 26, Unit 11)

Permanent Parcel No.: 09-85697 (as to Condominium VII, Bldg. 26, Unit 12)

Permanent Parcel No.: 09-85698 (as to Condominium VII, Bldg. 26, Unit 13)

Permanent Parcel No.: 09-85699 (as to Condominium VII, Bldg. 26, Unit 14)

Permanent Parcel No.: 09-85700 (as to Condominium VII, Bldg. 26, Unit 15)

Permanent Parcel No.: 09-85701 (as to Condominium VII, Bldg. 26, Unit 16)

Permanent Parcel No.: 09-85702 (as to Condominium VII, Bldg. 27, Unit 1)

Permanent Parcel No.: 09-85703 (as to Condominium VII, Bldg. 27, Unit 2)

Permanent Parcel No.: 09-85704 (as to Condominium VII, Bldg. 27, Unit 3)

Permanent Parcel No.: 09-85705 (as to Condominium VII, Bldg. 27, Unit 4)

Permanent Parcel No.: 09-85706 (as to Condominium VII, Bldg. 27, Unit 5)

Permanent Parcel No.: 09-85707 (as to Condominium VII, Bldg. 27, Unit 6)

Permanent Parcel No.: 09-85708 (as to Condominium VII, Bldg. 27, Unit 7)

Permanent Parcel No.: 09-85709 (as to Condominium VII, Bldg. 27, Unit 8)

Permanent Parcel No.: 09-85710 (as to Condominium VII, Bldg. 27, Unit 9)

Permanent Parcel No.: 09-85711 (as to Condominium VII, Bldg. 27, Unit 10)

Permanent Parcel No.: 09-85712 (as to Condominium VII, Bldg. 27, Unit 11)

Permanent Parcel No.: 09-85713 (as to Condominium VII, Bldg. 27, Unit 12)

Permanent Parcel No.: 09-85714 (as to Condominium VII, Bldg. 27, Unit 13)

Permanent Parcel No.: 09-85715 (as to Condominium VII, Bldg. 27, Unit 14)

Permanent Parcel No.: 09-85716 (as to Condominium VII, Bldg. 27, Unit 15)

Permanent Parcel No.: 09-85717 (as to Condominium VII, Bldg. 27, Unit 16)

Permanent Parcel No.: 09-85718 (as to Condominium VII, Bldg. 30, Unit 1)

Permanent Parcel No.: 09-85719 (as to Condominium VII, Bldg. 30, Unit 2)

Permanent Parcel No.: 09-85720 (as to Condominium VII, Bldg. 30, Unit 3)

Permanent Parcel No.: 09-85721 (as to Condominium VII, Bldg. 30, Unit 4)

Permanent Parcel No.: 09-85722 (as to Condominium VII, Bldg. 30, Unit 5)

Permanent Parcel No.: 09-85723 (as to Condominium VII, Bldg. 30, Unit 6)

Permanent Parcel No.: 09-85724 (as to Condominium VII, Bldg. 30, Unit 7)

Permanent Parcel No.: 09-85725 (as to Condominium VII, Bldg. 30, Unit 8)

Permanent Parcel No.: 09-85726 (as to Condominium VII, Bldg. 30, Unit 9)

Permanent Parcel No.: 09-85727 (as to Condominium VII, Bldg. 30, Unit 10)

Permanent Parcel No.: 09-85728 (as to Condominium VII, Bldg. 30, Unit 11)

Permanent Parcel No.: 09-85729 (as to Condominium VII, Bldg. 30, Unit 12)

Permanent Parcel No.: 09-85730 (as to Condominium VII, Bldg. 30, Unit 13)

Permanent Parcel No.: 09-85731 (as to Condominium VII, Bldg. 30, Unit 14)

Permanent Parcel No.: 09-85732 (as to Condominium VII, Bldg. 30, Unit 15)

Permanent Parcel No.: 09-85733 (as to Condominium VII, Bldg. 30, Unit 16)

Permanent Parcel No.: 09-85734 (as to Condominium VII, Bldg. 31, Unit 1)

Permanent Parcel No.: 09-85735 (as to Condominium VII, Bldg. 31, Unit 2)

Permanent Parcel No.: 09-85736 (as to Condominium VII, Bldg. 31, Unit 3)

Permanent Parcel No.: 09-85737 (as to Condominium VII, Bldg. 31, Unit 4)

Permanent Parcel No.: 09-85738 (as to Condominium VII, Bldg. 31, Unit 5)

Permanent Parcel No.: 09-85739 (as to Condominium VII, Bldg. 31, Unit 8)

Permanent Parcel No.: 09-85740 (as to Condominium VII, Bldg. 31, Unit 7)

Permanent Parcel No.: 09-85741 (as to Condominium VII, Bldg. 31, Unit 8)

Permanent Parcel No.: 09-85742 (as to Condominium VII, Bldg. 31, Unit 9)

Permanent Parcel No.: 09-85743 (as to Condominium VII, Bldg. 31, Unit 10)

Permanent Parcel No.: 08-85744 (as to Condominium VII, Bldg. 31, Unit 11)

Permanent Parcel No.: 09-85745 (as to Condominium VII, Bldg. 31, Unit 12)

Permanent Parcel No.: 09-85746 (as to Condominium VII, Bldg. 31, Unit 13)

Permanent Parcel No.: 09-85747 (as to Condominium VII, Bldg. 31, Unit 14)

Permanent Parcel No.: 09-85748 (as to Condominium VII, Bldg. 31, Unit 15)

Permanent Parcel No.: 09-85749 (as to Condominium VII, Bldg. 31, Unit 16)

Parcel 2:

Situated in the City of Toledo, County of Lucas and State of Ohio:

And known as being all that part of Lot three (3) Larchmont Gardens in the Northeast one-quarter (1/4) of Section fifteen (15), Town nine (9) South, Range seven (7) East, in the City of Toledo, Lucas County, Ohio, bounded and described as follows:

Beginning at a point in the Southerly line of the right-of-way of The Toledo Terminal Railroad, which point is distant Southerly seventy (70) feet from the North line of said Section fifteen (15), and distant Westerly seven hundred sixty-two and thirty-six hundredths (762.36) feet from the North and South centerline of the said Northeast one-quarter (1/4) of Section fifteen (15);

Thence South zero (00) degrees, fifty-eight (58) minutes, seven (7) seconds West, a distance of one hundred forty-nine and sixty-five hundredths (149.65) feet;

Thence South thirteen (13) degrees, eleven (11) minutes, nineteen (19) seconds East, a distance of one hundred seventy-six and fifty-three hundredths (176.53) feet to a point in the Northerly line of Slater Street (so-called);

Thence along the said Northerly line of Slater Street the following three courses:

A distance of eighty and eighty-six hundredths (80.86) feet on a curve to the right having a radius of eight hundred eighty-eight and fifteen hundredths (888.15) feet, a central angle of five (5) degrees, twelve (12) minutes, fifty-eight (58) seconds, a chord of eighty-seven (87) degrees, twenty-three (23) minutes, thirty-one (31) seconds West;

North ninety (90) degrees, zero (00) minutes, zero (00) seconds West, a distance of two hundred eighty-eight and forty hundredths (288.40) feet, and a distance of forty-two and sixty-five hundredths (42.65) feet on a curve to the right having a radius of two hundred forty-five and

forty-five hundredths (245.45) feet, a central angle of nine (9) degrees, fifty-seven (57) minutes, twenty-three (23) seconds, a chord of forty-two and sixty hundredths (42.60) feet and a chord bearing North eighty-five (85) degrees, one (1) minute, eighteen (18) seconds West;

Thence North twenty-eight (28) degrees, thirty (30) minutes, zero (00) seconds East, a distance of one hundred seventy-one and sixteen hundredths (171.16) feet;

Thence North zero (00) degrees, fifty-eight (58) minutes, seven (7) seconds East, a distance of one hundred seventy-five and ninety-eight hundredths (175.98) feet to a point in the Southerly line of the right-of-way of the said Toledo Terminal Railroad;

Thence South eighty-nine (89) degrees, one (1) minute, fifty-three (53) seconds East, along the said Southerly line of the right-of-way of The Toledo Terminal Railroad, a distance of two hundred eighty-nine and twenty-three hundredths (289.23) feet to the point of beginning.

Permanent Parcel No.: 09-53761

Parcel 3: Situated in the City of Toledo, County of Lucas and State of Ohio:

And known as being all that part of the Northeast one-quarter (1/4) of Section fifteen (15), Town nine (9) South, Range seven (7) East, in the City of Toledo, Lucas County, Ohio bounded and described as follows:

Beginning at a point in the Southerly line of the right-of-way of The Toledo Terminal Railroad, which point is distant Southerly seventy (70) feet from the North line of said Section fifteen (15), and distant sixteen and five tenths (16.5) feet from the North and South centerline of the said Northeast one-quarter (1/4) of Section fifteen (15);

Thence North eighty-nine (89) degrees, one (1) minute, fifty-three (53) seconds West, along the said Southerly line of the right-of-way of The Toledo Terminal Railroad, which line is drawn parallel to the said North line of Section fifteen (15), a distance of two hundred seventeen and

two hundredths (217.02) feet (recorded as two hundred seventeen and one hundredth (217.01) feet);

Thence South zero (00) degrees, twenty-three (23) minutes, forty-three (43) seconds West along a line parallel to the said North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15), a distance of one hundred seventy-nine and fifty-six hundredths (179.56) feet to a point in the Northerly line of Slater Street (so called);

Thence a distance of two hundred twenty and twenty-seven hundredths (220.27) feet (recorded as two hundred twenty and twenty-six hundredths (220.26) feet) along the said Northerly line of Slater Street on a curve to the right having a radius of nine hundred eight and seventy-one hundredths (908.71) feet and a central angle of thirteen (13) degrees, fifty-three (53) minutes, eighteen (18) seconds, a chord of two hundred nineteen and seventy-three hundredths (219.73) feet and a chord bearing North eighty-one (81) degrees, twenty-two (22) minutes, twelve (12) seconds East;

Thence North zero (00) degrees, twenty-three (23) minutes, forty-three (43) seconds East along a line parallel to the said North and South centerline of this Northeast one-quarter (1/4) of Section fifteen (15), a distance of one hundred forty-two and ninety-two hundredths (142.92) feet (recorded as one hundred forty-three and sixteen hundredths (143.16) feet) to the point of beginning.

Permanent Parcel No.: 18-21409

Parcel 4:

Situated in the City of Toledo, County of Lucas and State of Ohio;

And known as being all of that part of the Northeast one-quarter (1/4) of Section fifteen (15), Town nine (9) South, Range seven (7) East, in the City of Toledo, Lucas County, Ohio, bounded and described as follows:

Beginning at a point in the Southerly line of the right-of-way of The Toledo Terminal Railroad, which point is distant Southerly seventy and no tenths (70.0) feet from the Northerly line of the said Section fifteen (15), and distant Westerly sixteen and fifty hundredths (16.50) feet from the North and South centerline of the said Northeast one-quarter (1/4) of Section fifteen (15);

Thence Westerly on a bearing of North eighty-nine (89) degrees, one (1) minute, fifty-three (53) seconds West, calculated, along the Southerly line of the right-of-way of The Toledo Terminal Railroad, which line is drawn parallel to the said Northerly line of Section fifteen (15), a distance of two hundred seventeen and one hundredth (217.01) feet, deed, or two hundred seventeen and two hundredths (217.02) feet, calculated, more or less, to the Northeasterly corner of the Plat of Larchmont Gardens, a plat of record, recorded in Volume 52, pages 51 and 52, Book of Plats, Lucas County, Ohio Records (said Northeasterly corner of the plat of Larchmont Gardens being the Northeasterly corner of Lot three (3) in the said Plat of Larchmont Gardens);

Thence Southerly on a bearing of South zero (00) degrees, twenty-three (23) minutes, forty-three (43) seconds West, calculated, along a line drawn parallel to the said North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15) (said line drawn parallel to the aforementioned North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15) being the Easterly line of the aforementioned plat of Larchmont Gardens), a distance of one thousand, one hundred eighty-six and thirty-four hundredths (1,186.34) feet, deed and record, or one thousand, one hundred eighty-six and twenty-four hundredths (1,186.24) feet, calculated, more or less, to a point in the Northerly line of Plat No. 2 of Homeville, a plat of record, recorded in Volume 31 , pages 39 to 42, both inclusive, Book of Plats, Lucas County, Ohio records; (the aforementioned point in the Northerly line of the said Plat No. 2 of Homeville being the Southeasterly corner of the said Plat of Larchmont Gardens, which is also the Southeasterly corner of Lot six (6) in the said Plat of Larchmont Gardens);

Thence Easterly on a bearing of North ninety (90) degrees, zero (00) minutes, zero (00) seconds East, calculated, along the said Northerly line of Plat No. 2 of Homeville, and its Easterly extension, a distance of two hundred seventeen and one hundredths (217.01) feet, deed and calculated, more or less, to a point that is distant Westerly sixteen and fifty hundredths (16.50) feet from the said North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15);

Thence Northerly, on a bearing of North zero (00) degrees, twenty-three (23) minutes, forty-three (43) seconds East, calculated, along a line drawn parallel to the said North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15), a distance of one thousand, one hundred eighty-two and sixty-eight hundredths (1,182.68) feet, deed, or one thousand, one hundred eighty-two and fifty-seven hundredths (1,182.57) feet, calculated, more or less, to the point of beginning;

Excepting therefrom those parts thereof dedicated for the extension of Slater Street and Cribb Street as shown on the aforementioned plat of Larchmont Gardens, containing 5.297 acres of land, more or less.

Subject to all legal easements and restrictions and leases of record and of records in respective utility offices. The bearings referred to herein are based upon an assumed meridian and are used only for the termination of angular measurements.

Excepting from the above described parcel the following described parcel:

Situated in the City of Toledo, County of Lucas and State of Ohio:

And known as being all of that part of the Northeast one-quarter (1/4) of Section fifteen (15), Town nine (9) South, Range seven (7) East, in the City of Toledo, county of Lucas and State of Ohio and bounded as follows:

Beginning at a point in the Southerly line of the right-of-way of The Toledo Terminal Railroad, which point is distant Southerly seventy (70) feet from the North line of said Section fifteen (15), and distant Westerly sixteen and five tenths (16.5) feet from the North and South centerline of the said Northeast one-quarter (1/4) of Section fifteen (15);

Thence North eighty-nine (89) degrees, one (1) minute, fifty-three (53) seconds West, along the said Southerly line of the right-of-way of The Toledo Terminal Railroad, which line is drawn parallel to the said North line of Section fifteen (15), a distance of two hundred seventeen and

two hundredths (217.02) feet (recorded as two hundred seventeen and one hundredth (217.01) feet);

Thence South zero (00) degrees, twenty-three (23) minutes, forty-three (43) seconds West, along a line parallel to the said North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15), a distance of one hundred seventy-nine and fifty-six hundredths (179.56) feet to a point in the Northerly line of Slater Street (so- called);

Thence a distance of two hundred twenty and twenty-seven hundredths (220.27) feet (recorded as two hundred twenty and twenty-six hundredths (220.26) feet) along the said Northerly line of Slater Street on a curve to the right having a radius of nine hundred eight and seventy-one hundredths (908.71) feet, a central angle of thirteen (13) degrees, fifty-three (53) minutes, eighteen ) (18) seconds a chord of two hundred nineteen and seventy-three hundredths (219.73) feet and a chord bearing North eighty-one (81) degrees, twenty-two (22) minutes, twelve (12) seconds East;

Thence North zero (00) degrees, twenty-three (23) minutes, forty-three (43) seconds East, along a line parallel to the said North and South centerline of the Northeast one-quarter (1/4) of Section fifteen (15), a distance of one hundred forty-two and ninety-two hundredths (142.92) feet (recorded as one hundred forty-three and sixteen hundredths (143.16) feet) to the point of beginning.

Permanent Parcel No.: 18-21405 (Part of Parcel 4)

Permanent Parcel No.: 18-21406 (Part of Parcel 4)